**UNITED STATES of America, Appellee,**

v.

**Douglas SANDERS, Jr., Appellant.**

**No. 76–1362.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1976.

Decided Dec. 30, 1976.

Rehearing and Rehearing En Banc Denied Jan. 24, 1977.

Daniel B. Hayes, Clayton, Mo., for appellant.

Richard A. Heidenry, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U. S. Atty., St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Douglas Sanders, Jr. appeals from his jury conviction on one count of assault on a federal officer in violation of 18 U.S.C. § 111 and one count of theft from an interstate shipment in violation of 18 U.S.C. § 659. Appellant did not himself take the stand, relying instead upon an alibi defense supplied by three other witnesses. In this appeal, he challenges the sufficiency of the evidence of identification. He also contends that it was plain error not to exclude certain in-court identifications because they were tainted by impermissibly suggestive prior showups. Finally he contends that he was prejudiced by the comments of the government prosecutor during final argument that he claims both misstated the evidence and drew attention to his failure to testify. Upon a full review of the record, we reject these contentions and affirm the judgment of conviction.

The government offered evidence of a surveillance that took place on the morning of September 27, 1974, in a parking lot at Schnucks Market, located at the northeast corner of Clayton and Hanley roads in Clayton, Missouri, a St. Louis suburb. The surveillance had been requested by Gerald Spitznagel, security manager for United Parcel Service, following a number of thefts from UPS trucks parked in the Schnucks lot. Four FBI agents and Spitznagel participated.

At approximately 9:40 a. m. a red Mustang entered the lot; the driver remained in the car, causing Agent Michael Nez to radio for a registration check.[1] Shortly thereafter, two UPS trucks entered the lot and the truck drivers entered the store. The occupant of the red Mustang drove alongside one of the trucks, entered the cab and snipped the padlock to the storage compartment with bolt cutters. He was then observed removing a box of merchandise and placing it in the back seat of the Mustang. As the agents moved in to make an arrest, the Mustang made a rapid exit from the lot, narrowly missing one agent who tried to block the way.

A chase followed, during which the Mustang was seen travelling east on nearby Highway 40, by Charles Lebens, a businessman driving en route to St. Louis,[2] and by FBI Agent Cagle, who was parked farther east and had heard the radio report of the incident and the chase. Cagle observed that the license number and appearance of the automobile corresponded to the description in the radio report and radioed that he had spotted the vehicle, giving its location and direction. He was also able to observe the driver's appearance as he drove by.

At approximately 10:53 a. m., appellant entered police headquarters and asked to borrow a quarter because his car had been stolen. One of the city detectives was working on the Schnucks case and who had been following the radio reports was present and asked for appellant's name, home address and type of car. When appellant identified himself, he was immediately arrested. The red Mustang was found approximately eight blocks from the police station.

I

Appellant does not contend that the government failed to prove the assault or the theft, or even that his automobile was the red Mustang involved; he argues that the government failed to prove that he was the driver of the automobile and hence the

---

1. The car was registered to appellant.

2. The Mustang crossed in front of Lebens as he was heading south on Hanley toward Clayton and Highway 40, and proceeded west on Clayton. A short time later, it passed him again as he was heading east on Highway 40. He noted the license number.

**1040**

person who committed the offenses. We disagree.

The identification evidence in this case was unusually strong. Two agents who were in a position to observe the offenses positively identified appellant in court. Spitznagel was about three feet from appellant as he drove out of the lot and he, too, made a positive identification.[3] Cagle made an in-court identification. His description included a red hat. At the time of his arrest, appellant had white gloves and a red hat in his possession.[4]

■■■ The uncorroborated testimony of a single eyewitness, if believed, may be sufficient to sustain an identification upon which a conviction depends. *United States v. Dodge,* 538 F.2d 770, 783 (8th Cir. 1976). In this case, there was strong evidence of identification by experienced law enforcement officers who had time, ability and opportunity to observe the thief, and their identifications were both reliable and trustworthy. *See United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552, 558–59 (1972). *See also United States v. Roundtree,* 527 F.2d 16, 19 (8th Cir. 1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976). It was clearly not plain error to submit the case to the jury.[5]

## II

■■■ Appellant contends that the in-court identifications should in any event have been excluded because they were tainted by showups which occurred at the police station following the arrest. Since no motions or objections were made on this ground prior to or at trial, we review this contention under the plain error rule. Fed.R. Crim.P. 52(b).

Each of the four witnesses who made in-court identifications of appellant had reported to the police station within two hours after the original incident.

■■■ A showup occurs when a single person is presented as a suspect to a viewing eyewitness. This method of identification has been criticized as inherently suggestive and a practice to be avoided when a line-up procedure is readily available. *See Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States ex rel. Kirby v. Sturges,* 510 F.2d 397, 403–04 (7th Cir.), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). *See also* N. Sobel, Eye-Witness Identification § 3 (1972). On the other hand, "the admission of evidence of a showup without more does not violate due process." *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In this case, three of the witnesses were agents of the Federal Bureau of Investigation. The fourth was a trained security officer with five years of experience as a security manager at United Parcel Service. These are not inexperienced lay witnesses who might be expected to infer from the stationhouse showup that the arresting officers believed they had the culprit, thereby influencing the witnesses'

3. The radio broadcast description supplied by these men was of a black male 20 to 25 years of age, 140 to 150 pounds, with a goatee, wearing yellow pants, a dark coat and gloves. Agent Largent thought from where he stood that the thief was 5'7" to 5'8" in height, but Agent Nez quickly corrected the report to 6'.

4. The driver of the red Mustang was also observed to be wearing yellow gold pants. When arrested, appellant was wearing tan plaid pants. There was evidence that appellant had left his home that morning in gold pants, and it was the government's position that there was ample time for him to change before checking in with the police. This was a fact which the jury was entitled to evaluate with all the other evidence.

5. Defense counsel moved for a directed verdict at the close of the government's case but did not renew this motion at the close of all the evidence. While such failure has been said to be a waiver of the sufficiency issue, *see, e. g., United States v. Edwards,* 443 F.2d 1286, 1295 (8th Cir.), *cert. denied,* 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 259 (1971), our more recent practice has been to review the record under the plain error rule. *See United States v. McIntyre,* 467 F.2d 274, 276 n. 1 (8th Cir. 1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 972, 35 L.Ed.2d 274 (1973). In making this evaluation, we take the entire record into account, including evidence adduced during the defendant's case. *See United States v. Davis,* 542 F.2d 743 at 746 (8th Cir. 1976).

identification.[6] The officers were in the course of their investigation; they were looking for appellant, whose name and address they already had; and their purpose at the showup was to see whether appellant was in fact the person they saw at Schnucks. Under the totality of circumstances presented by this case, we cannot say that the showup procedure was so manifestly unjust as to make the failure of the District Court to exclude the in-court identifications plain error. *See Simmons v. United States,* 390 U.S. 377, 385–86, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States ex rel. Kirby v. Sturges, supra,* 510 F.2d at 404.[7]

## III

Appellant's final contentions deal with claims of improper argument by government counsel in his closing argument.[8]

Appellant was questioned at the police station by Agents Largent and Weldy following his arrest and after being advised of his Miranda rights. Appellant offered an alibi explanation of his conduct on the morning of the theft and assault. Appellant did not take the stand, but his statement was admitted without objection through the testimony of Agents Largent and Weldy.[9] In his rebuttal on closing argument, the government attorney made reference to that statement. He said:

> Now, what else doesn't hold true? Where's the other—this statement of his. One thing it just doesn't make sense. He was at the Methadone Center but, you know, if my understanding is correct, he goes to Newstead and Olive. Then he goes to Blackstone and Page, a considerable distance away. And then he comes back to Vandeventer and Olive, a block away from where he was before. That's the order it happened because that's the

---

**6.** The ability of a trained investigator to see and observe has been recognized as relevant in judging the reliability of his identification of a suspect. Particularly, this ability is a factor to consider in determining whether an in-court identification following an impermissibly suggestive identification procedure has a basis independent of the suggestive procedure. *See United States v. Reid,* 517 F.2d 953, 966 (2d Cir. 1975); *United States v. Ganter,* 436 F.2d 364, 372 (7th Cir. 1970); *United States v. Cox,* 428 F.2d 683, 686–87 (7th Cir.), *cert. denied,* 400 U.S. 881, 91 S.Ct. 127, 27 L.Ed.2d 120 (1970); *United States v. Kilgore,* 418 F.2d 225, 226 (9th Cir. 1969). *See also United States v. Bothwell,* 465 F.2d 217, 220 (9th Cir. 1972).

**7.** Furthermore, the identifications clearly satisfied the tests of *Neil v. Biggers, supra,* for determining the reliability of in-court identifications: the opportunity of the witness to view the accused at the scene of the crime, his degree of attention, the accuracy of his prior descriptions, his level of certainty at the confrontation, and the length of time between the crime and the confrontation. 409 U.S. at 199–200, 93 S.Ct. 375.

**8.** We deal summarily with appellant's contention that the government attorney misrepresented the evidence when he stated that two court employees "remembered" appellant when he reported to them prior to 9:00 on the morning of the theft that his car had been stolen. Neither employee could identify appellant. The government contends its argument was based on their memory of the report, since it was the

only one made to them at the information desk that week. This and other statements assigned as error on appeal were well within the range of limited comment on the government's version of what the evidence established. *See United States v. Washington,* 528 F.2d 953, 954 (8th Cir. 1975); *United States v. Hager,* 505 F.2d 737, 740 (8th Cir. 1974); *United States v. Lawson,* 483 F.2d 535, 539 (8th Cir. 1973), *cert. denied,* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974); *Wakaksan v. United States,* 367 F.2d 639, 646 (8th Cir. 1966), *cert. denied,* 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967). *Cf. United States v. Bledsoe,* 531 F.2d 888, 892 (8th Cir. 1976). The jury was advised that arguments of counsel were not evidence, and we find this contention to be without merit.

**9.** Appellant told the agents that he had run some errands for his mother between 7:00 a. m. and 8:00 a. m. and returned to her house. He then went to downtown St. Louis because he was to appear in traffic court that morning. On his way downtown (east) he said he bought a newspaper at a newsstand at Newstead and Olive. He then purchased some orange juice and gin at a liquor store at Blackstone and Page (which is considerably northwest of his last stop). He then returned east, stopping at a Methadone Treatment Center at Olive and Vandeventer. From there he travelled east to the area of the Municipal Courts Building at 13th and Market Streets.

way he said and that is undisputed. It's uncontradicted and it's undenied.

Appellant contends that the last quoted sentence was an impermissible comment upon his failure to take the stand. No objection was made at time of trial and this point likewise is reviewed under the plain error rule.

■ A comment by the government upon the failure of the defendant to testify invades his Fifth Amendment privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The error may be harmless, however, under all the circumstances. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Warner,* 428 F.2d 730, 740 (8th Cir.), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970). In testing the remarks, we look to see whether the comment was clearly intended or was of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify. *United States v. Thurmond,* 541 F.2d 774, 776 (8th Cir. 1976); *United States v. Williams,* 503 F.2d 480, 485 (8th Cir. 1974); *United States v. Williams,* 479 F.2d 1138, 1140 (4th Cir.), *cert. denied,* 414 U.S. 1025, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973). A second point of inquiry is whether the statements were prejudicial to the defendant. *United States v. Biondo,* 483 F.2d 635, 644 (8th Cir. 1973), *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); [10] *cf. United States v. Handman,* 447 F.2d 853 (7th Cir. 1971).

■ The circumstances of this case are unusual in that the government attorney was describing appellant's own prior out-of-court statement. He was openly questioning the illogical comings and goings of the appellant during the morning in question, as disclosed in his statement. The same alibi explanations had been carried forward by defense counsel in his own version of the evidence in closing argument. Government counsel was simply arguing on rebuttal that his story "doesn't make sense" and that defense evidence did not offer anything to the contrary and in fact supported the earlier statement. The significance of this evidence lay in whether the jury would accept appellant's version and conclude that the theft must have been committed by someone who had stolen appellant's car, or would adopt the government's theory that appellant could have touched two bases where he was seen (the Methadone Center and the Municipal Courts Building) and still have had time to be in Clayton and steal the merchandise from the truck. The government contended that the alibi as to places where appellant was not placed by defense witnesses was too improbable to rebut the strong evidence that appellant was the thief. Conceding these circumstances, we conclude that the comment could only fairly be taken as a reference to the defense evidence which was consistent with and did not refute the out-of-court statement of appellant. At most, it was harmless error beyond reasonable doubt. *See Chapman v. California, supra.*

■ We add a word of caution about future use of the word "undenied." It carries a strong connotation that somehow the defendant himself has failed to rebut a particular point of evidence, and thus brings a prosecutor perilously close to invading the defendant's right of silence by disparaging his exercise of that right. Who else can "deny" evidence? While other evidence can be brought forward to "contradict" the government's evidence, *see Robbins v. United States,* 476 F.2d 26, 29 (10th

---

**10.** No cautionary instructions were given since none were requested. Courts are understandably reluctant to focus attention upon a passing comment of this nature unless the party affected objects or requests such an instruction. The First Circuit, however, in the exercise of its supervisory authority, now imposes the responsibility upon the District Court to interrupt the argument, give cautionary instructions, and tell the jury the U. S. Attorney was guilty of misconduct; otherwise, the comment will not be found harmless error. *United States v. Flannery,* 451 F.2d 880, 882 (1st Cir. 1971).

Cir. 1973), and when no evidence at all has been offered by the defense on a particular issue it may fairly be said that the evidence is "undisputed," *see United States v. Hart,* 407 F.2d 1087, 1090 (2d Cir.), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1766, 23 L.Ed.2d 231 (1969), even these terms can cause trouble when the evidence referred to is crucial or the government's case is not overwhelming. *See United States v. Fearns,* 501 F.2d 486, 490 (7th Cir. 1974); *United States v. Flannery, supra; Rodriguez-Sandoval v. United States,* 409 F.2d 529, 531 (1st Cir. 1969). Some courts have looked to see whether under the facts anyone beside the defendant himself might have been produced to controvert the government's case, or whether the comment of necessity focused the jury's attention upon the defendant and his failure to testify in contradiction. *See United States v. Pritchard,* 458 F.2d 1036, 1040 (7th Cir.), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2434, 32 L.Ed.2d 685 (1972); *Tanner v. United States,* 401 F.2d 281, 289 (8th Cir. 1968), *cert. denied,* 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969); *Holden v. United States,* 388 F.2d 240 (1st Cir.), *cert. denied,* 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132 (1968). *See also* Annot., 24 A.L.R.3d 1093; Annot., 14 A.L.R.3d 723. *But see United States v. Noah,* 475 F.2d 688, 696 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973). This seems a slim reed upon which to place reliance.

A prosecutor who refers to the evidence as "undenied" when the defendant has not taken the stand exposes his case to the possibility of reversible error and necessarily calls into play a more searching review of the evidence on appeal than would otherwise be required. Prosecutors may strike hard blows but not foul ones. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In this case, as in most cases which have been diligently prepared and competently tried, the risk is simply not worth the candle and is increasingly likely to offend the conscience of the court.

Affirmed.