**UNITED STATES of America, Appellee,**

**v.**

**Judith Ann OSTERTAG a/k/a Judith Ann Davis and Susan Wilson, Appellant.**

**No. 79–1818.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1980.

Decided April 22, 1980.

George E. Duis, Fargo, N. D., for appellant.

James R. Britton, U. S. Atty. and Gary Annear (argued), Asst. U. S. Atty., Fargo, N. D., on brief for appellee.

Before LAY, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Two young women bilked an elderly Grand Forks, North Dakota, woman (the victim) out of $37,000 in cash and $20,000 in jewelry by playing a confidence game known as pigeon-dropping. One woman, using the name Susan Wilson, and another, who called herself Gail Baker, transported the victim and her assets from place to place in a late-model Ford Thunderbird. Finally, the swindlers drove across the North Dakota-Minnesota border, dropped the victim at a service station in East Grand Forks, Minnesota, and absconded with the loot. Tracing of the Thunderbird's Alabama license number resulted in apprehension of the appellant, Judith Ann Ostertag, also known as Judy Davis, allegedly alias Susan Wilson.

A grand jury indicted Ms. Ostertag for interstate transportation of stolen property valued in excess of $5,000, in violation of 18 U.S.C. § 2314 (1976). Ms. Ostertag was convicted of that crime after a jury trial in the District of North Dakota and sentenced to seven years' imprisonment, with eligibility for parole to be determined by the parole commission, as provided by 18 U.S.C. § 4205(b)(2) (1976). Ms. Ostertag appeals from the conviction, claiming that the evidence was insufficient and that prosecutorial misconduct and the presence of inadmissible evidence marred her trial. We affirm the conviction.[1]

## I. *The Pigeon-drop Operation.*

On August 10, 1977, Susan Wilson (alleged to be defendant-appellant Ostertag) met the victim on the city streets of Grand Forks. Ms. Wilson inquired as to the location of a senior citizens building and identified herself as working for HEW. Moments later a confederate, calling herself Gail Baker, arrived on the scene. She carried a long manila envelope bearing code words, and she stated that she had found it on the sidewalk. Ms. Baker opened the envelope and pulled out a slip of paper which bore the legend "Bond."

Although the victim suggested that the finder should take the envelope to a postoffice station, Ms. Baker said that she would consult her boss—a lawyer. Ms. Baker then left the scene.

Susan Wilson thereafter engaged the victim in friendly conversation in Wilson's nearby automobile. The confederate, Ms. Baker, returned to tell of the results of her conference with her "boss." Before revealing these results, Ms. Baker obtained promises of secrecy and cooperation from Ms. Wilson and the victim.

The confederate, Ms. Baker, then proceeded to tell her story. The envelope contained some cash ($35) and a bond worth $300,000. Baker's "boss" would take the bond to Canada and cash it that very evening. After expenses and "attorney's fees," the balance obtained would be divided among the "three girls, $69,000.00 apiece."

Thereafter, the victim and her new friends, Wilson and Baker, went to the victim's apartment in the Dakota Hotel at Grand Forks. Later that day, on the advice of these friends, the victim withdrew $7,000 from her checking account and gave the money to Ms. Baker. That evening, the victim further revealed the extent of her wealth to the other women and showed them her diamond rings kept in a cabinet in her apartment. The next day, August 11, the victim withdrew a $35,000 savings certificate and some jewelry from her safety deposit box at the request of Baker and Wilson. Gail Baker informed the victim that such withdrawals were necessary to avoid federal income tax on the bond and that part of the money and jewels would be placed in another security box. Still under the guidance of her new friends, the victim cashed the $35,000 savings certificate by opening a $5,000 bank account at the Community National Bank at Grand Forks, and obtaining the remainder in cash, traveler's

---

1. The Hon. Paul Benson, Chief Judge, United States District Court for the District of North Dakota, presided over the trial.

checks, and cashier's checks. Ultimately, the victim converted the full $30,000 into currency and left it in Ms. Baker's keeping, as she had with the jewelry and the $7,000 from her checking account. Ms. Baker assured the victim that the money and jewelry would later be returned.

Bank officers at the Community National Bank began to suspect some skulduggery when the victim returned to the bank during the afternoon on August 11 to cash a $10,000 cashier's check obtained at the bank earlier that day. Two bank officers recorded the license number (Alabama ANJ–972) of the 1977 Ford Thunderbird used for transportation by Ms. Baker, Ms. Wilson, and the victim. These bank officers followed the Thunderbird in another automobile. They lost the trail, however, when Ms. Baker drove the Thunderbird at a high speed outside of the Grand Forks, North Dakota, area into Minnesota.

Later that day Ms. Baker stopped the vehicle at an East Grand Forks, Minnesota, gasoline service station and made a telephone call from an outside booth. Ms. Baker called the victim into the booth to speak on the telephone. A male voice instructed the victim that Gail Baker would first drive Susan Wilson home and then return and pick up the victim to take her to her hotel. Needless to say, the victim waited in vain. Her money and jewelry disappeared.

Later the victim called for a taxicab to take her home. Upon reaching her home, the victim received a telephone call, falsely advising her that the two ladies who had been with her earlier that day had suffered injuries in an automobile accident. The next morning the victim discovered that her diamond rings had been stolen from the cabinet in her apartment. She realized that she had been defrauded, and a friend called the police.

## II. *The Investigation of the Crime and Apprehension of Judith Ann Ostertag.*[2]

Less than two weeks after the swindle, police located the 1977 Thunderbird at a Ford garage in Winnipeg, Manitoba, Canada. A woman using the name of Judy Davis had left the vehicle for repairs on August 12, 1977. Ms. Davis never returned to pick up the vehicle. The police and FBI investigators traced the automobile ownership to one Jerry E. Davis at a Birmingham, Alabama, address.

Upon investigation, the FBI matched fingerprints found on papers and maps in the vehicle to Judith Ann Ostertag, also known as Judy Davis. Additionally, an FBI handwriting expert matched the signature of Judy Davis on the garage repair order at Winnipeg with the signature and handwriting on documents relating to the purchase and financing of the Thunderbird automobile.

The FBI arrested the defendant in Atlanta at a Marriott Inn on June 22, 1979. At that time she was in the company of Jerry Davis and two small children. As Ms. Davis (Ostertag) reached for some clothing on a shelf in the hotel room, she passed her hand over a briefcase. Viewing this action, an FBI agent seized the briefcase and opened it to ascertain whether the briefcase contained a weapon. Finding no weapon, the agent seized other materials found inside the briefcase, including a manila envelope, a money case, play money, and three-by-five cards listing the names, Social Security status, and assets of two women, one from Alabama, one from Tennessee.

The victim, in her testimony at trial, identified Judith Ostertag as the person known to her as Susan Wilson, and, according to the testimony of an FBI agent, had made a similar identification in a photo spread.

## III. *Issues on Appeal and Discussion.*

Appellant makes the following contentions on appeal:

1) The evidence was insufficient to support her conviction;

2) The in-court identification was flawed because the prosecutor did not require an identification at a pretrial lineup;

---

2. The woman calling herself Gail Baker has not been apprehended.

3) The prosecutor's final argument was improper;

4) The trial court erred in admitting as evidence materials taken from the briefcase by the FBI without a warrant.

We find that these contentions lack any substantial merit.

■ The Government produced overwhelming evidence that Ms. Ostertag participated in the crime under the name of Susan Wilson. As the factual recitation above indicates, the victim identified the defendant as Susan Wilson. Fingerprint and handwriting evidence revealed that the person who had used the Thunderbird automobile in the commission of the crime and who had abandoned the car in Winnipeg on the day following the completion of the pigeon-drop was Judy Davis, also known as Judith Ann Ostertag, the appellant. The testimony also established that the criminals took property from the victim in North Dakota and carried this property into Minnesota, thereby satisfying the interstate transportation element of the crime under 18 U.S.C. § 2314 (1976). Thus, we reject appellant's attack upon the sufficiency of the evidence. *See United States v. Frye*, 548 F.2d 765 (8th Cir. 1977).

■ The appellant asserts that in the interests of justice, a lineup should have been conducted on the eve of trial. However, counsel made no request or motion to the court for such a lineup. Appellant points to no constitutional right to a lineup and the cases indicate no such right exists. *United States v. Estremera*, 531 F.2d 1103, 1111 (2d Cir.), *cert. denied*, 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976); *United States v. McGhee*, 488 F.2d 781, 786 (5th Cir.), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3077, 41 L.Ed.2d 670 (1974); *United States v. Hall*, 437 F.2d 248, 249 (3d Cir.), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971).

■ Moreover, the victim's eyewitness identification of Ostertag, buttressed by FBI testimony that the victim picked Ms. Ostertag's photo out of several displayed as that of Susan Wilson, together with other circumstantial evidence tying Ms. Ostertag to the ownership and use of the Ford Thunderbird, established beyond any doubt that Ostertag participated in bilking the victim of money and jewels. No prejudice is shown from any absence of a lineup identification.

■ We find no merit in the appellant's contention that improper argument justifies a reversal. The prosecutor stated:

I submit to you that she is a woman in her twenties. She has lent herself to a life of crime, profiting from bilking people such as [the victim]. She is vicious, she is cunning, she is skillful.

On defense counsel's objection, the court reminded the jury that statements made in argument which are not supported by the evidence should be disregarded. In light of that instruction and the overwhelming evidence of guilt, the prosecutor's remark, even if deemed improper in part, cannot be considered so prejudicial as to require a reversal. *See United States v. Splain*, 545 F.2d 1131 (8th Cir. 1976).

■ Finally, we find it unnecessary to address the appellant's claim that the trial court erred in admitting evidence which the FBI agent seized from her briefcase, allegedly in violation of appellant's fourth amendment rights. Because appellant's counsel was aware of the existence of this evidence prior to trial, he should have raised any objection to its introduction by a motion before trial to suppress evidence under Rule 12(b)(3), Fed.R.Crim.P. However, the district court did not rely completely on that rule in admitting the questioned evidence.[3]

---

**3.** Trial counsel had replaced a prior defense attorney only a short time before the trial. Counsel asserts he learned of this evidence on the eve of trial and did not have a fair opportunity before trial to move to suppress the evidence in question. For the purposes of this case, we assume, arguendo, that defense counsel's objection to the evidence was timely. We note, however, that failure to move to suppress evidence prior to trial may constitute a waiver of any objection to its introduction. *United States v. Johnson*, 614 F.2d 622 (8th Cir. 1980).

■ The evidence in question was received only for the limited purpose of showing plan and identity, and added very little to the Government's case against Ms. Ostertag. As we have already observed, the Government, through eyewitness, handwriting and fingerprint evidence, proved the only real controverted issue at trial—the identity of Ms. Ostertag as a participant in the crime. The Government produced an exceptionally strong case against appellant Ostertag. In light of the whole record, we hold the admission of the evidence seized from the briefcase to be harmless beyond any reasonable doubt. *See Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Reed v. Wolff*, 511 F.2d 1369 (8th Cir. 1975); *Wright v. United States*, 389 F.2d 996, 1000 (8th Cir. 1968).

Finding no prejudicial error in this case, we affirm.