UNITED STATES of America, Appellee,

v.

John FANELLO, Appellant.

No. 81–1355.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 13, 1981.

Decided Oct. 29, 1981.

---

Robert A. Newcomb, Little Rock, Ark., for appellant.

George W. Proctor, U. S. Atty., Don N. Curdie, Asst. U. S. Atty., argued, Little Rock, Ark., for appellee.

Before HENLEY and ARNOLD, Circuit Judges, and BECKER,* Senior District Judge.

ARNOLD, Circuit Judge.

John Fanello appeals from his conviction in the District Court [1] of conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a) and 846. He was sentenced to five years imprisonment with a $15,000 fine. On appeal, Fanello raises the following issues: (1) whether the trial court erred in not granting a mistrial when the prosecutor allegedly violated an order in limine; (2) whether the court erred by not granting a mistrial when the prosecutor arguably commented on Fanello's failure to testify; and (3) whether there was a material variance between the indictment and the proof. We affirm.

The indictment alleged that Fanello and co-defendant Charles Medlen [2] had conspired, from August 20, 1978, to November 1, 1978, with numerous other individuals to distribute marijuana. Evidence introduced at trial by the government indicated that a plane load of marijuana was flown from Colombia to an area near Heber Springs,

Arkansas. The marijuana was loaded into a truck waiting at a small airstrip. When the plane attempted to take off, the truck carrying the marijuana was knocked over. Law-enforcement officials later discovered the overturned truck, set up surveillance in the area, and subsequently arrested several of the alleged co-conspirators.

The evidence against Fanello comes almost exclusively from the testimony of Mr. and Mrs. Ardell Mears. The Mearses testified that they had been neighbors of Fanello in Florida and were asked by him to locate a place in Arkansas for the purpose of distributing marijuana. Documentary evidence showed that a meeting between Fanello and the Mearses occurred in Memphis, Tennessee, in August of 1978. A paid informant also testified as to the route taken by the plane loaded with marijuana. No question is raised as to the sufficiency of the evidence.

### Motion In Limine

Prior to trial a motion in limine was filed requesting that none of the government witnesses testify about other alleged marijuana transactions involving Fanello. The motion specifically referred to the possibility that Mears might testify to other instances in which he distributed marijuana for the defendant. The trial court ruled that the government could not bring up the issue in its case-in-chief, but that the court might permit the prosecution to introduce it by way of rebuttal, or to use prior instances of distribution of marijuana in cross-examining Fanello if he took the stand.

During the direct examination of Mears, the government elicited a statement from the witness that Fanello was in the marijuana business.[3] At that point, the defend-

---

* The Hon. William H. Becker, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. Medlen was granted permission at the commencement of trial to have his case transferred

to Florida pursuant to Fed.R.Crim.P. 20 for the purposes of pleading guilty and being sentenced.

3. The following exchange occurred between Mears and the Assistant United States Attorney:

Q. Do you know why he [Fanello] called you?

ant objected and asked for a mistrial, contending that the government's question violated the court's order in limine. The court denied the motion but instructed the jury to disregard the witness's answer.

■ Trial judges have wide latitude in correcting minor errors that occur at trial. *United States v. Pappas*, 611 F.2d 399, 406 (1st Cir. 1979). In this case, the District Court did what was necessary to eliminate any possible prejudice that might have resulted from the witness's answer by subsequently telling the jury to disregard the remark and, in effect, sustaining the defendant's objection. Any error was thus rendered harmless. See *United States v. Biondo*, 483 F.2d 635 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974).

### Failure to Testify

Fanello next argues that the prosecutor improperly commented on his failure to take the stand and testify at trial. The comments occurred during closing argument as the prosecutor discussed generally the defendant's attacks on the Mearses' credibility and on their motive for implicating Fanello in the alleged conspiracy.[4] The

A. Well, I assumed that he had set it up— had set the deal up from whoever was flying the load for him.
Q. Why you in particular?
A. Well, we were in the same business.
Q. What business?
A. Marijuana business, pot.
Tr. 168.

4. The prosecutor proceeded to make the following comments alleged to be improper:
There is no motive for Mr. Mears to put the hat on this guy or Medlen. For there to be a motive, ladies and gentlemen, you have to speculate. You have to engage in conjecture. I understand why they would argue about informants, but there has to be a reason why they picked these people. I'm on the other side. If he's telling the truth, I'm in trouble. But I've got to show the jury he's telling a lie. How am I going to do that? Well, there's got to be a reason for them to decide on putting the hat on Fanello and Medlen. Ghee, I just can't—I don't know. I've got to give something.
You didn't see it because they can't come up with it. Ladies and gentlemen, all of the reasonable—
Tr. 305–06.

defendant objected to the prosecutor's remarks and requested a mistrial. Although overruling the defendant's objection, the trial court cautioned the prosecutor about the propriety of his comments.[5]

■ This Court has stated that "[a] comment by the government upon the failure of the defendant to testify invades his Fifth Amendment privilege against self-incrimination." *United States v. Sanders*, 547 F.2d 1037, 1042 (8th Cir. 1976), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2679, 53 L.Ed.2d 273 (1977). The error may be harmless, however, under all the circumstances, and we will

> look to see whether the comment was clearly intended or was of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify. A second point of inquiry is whether the statements were prejudicial to the defendant.

*Id.* (citations omitted).

■ Following the cautionary instruction from the District Court, the prosecutor clarified his earlier remarks.[6] In view of the total circumstances, we find that the prose-

5. The colloquy during bench conference between the Court and counsel, was as follows:
[Defense counsel]: I think [the prosecutor] keeps referring to the defendant not coming up with anything as obliquely commenting on Mr. Fanello not taking the stand, and I ask for a mistrial.
The Court: He is getting close. You are walking a very narrow line on any potential suggestion of his not taking the stand, but so far that's all right. I am overruling the objection, but I am cautioning you about it.
[Government]: All right.
Tr. 306.

6. The Assistant U. S. Attorney made the following statements in the presence of the jury:
Ladies and gentlemen, what I meant by that was in the cross examination of the informants, there was no question asked of them for you to be given an inclination of why, unless it were true, that they would testify about these people. That's what I meant.
Tr. 306.

cutor's statements, although of borderline propriety,[7] did not constitute reversible error. The statements, rather than referring to the failure of Fanello to testify, concerned the failure of the defense to elicit from the informants on cross-examination ulterior motives for implicating the defendant. In addition, we do not believe the jury would consider the remarks to be an indirect reference to Fanello's failure to testify, nor would the jury "naturally and necessarily" consider the statements as such. See *United States v. Thurmond*, 541 F.2d 774, 776 (8th Cir. 1976), *cert. denied*, 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977).

### Material Variance

■ Finally, Fanello contends that there was a material variance between the indictment and the proof at trial, such that the District Court should have dismissed the case. The indictment charged that the defendant acted in the Eastern District of Arkansas and elsewhere to conspire to distribute marijuana. Fanello argues that the government never proved he was in the Eastern District of Arkansas during the period of the alleged conspiracy.[8] This contention is without merit. To prevail on such a claim, Fanello must establish not only variance, but also that the variance affected his substantial rights. It must go to the heart of the indictment, with the proof offered at trial failing to establish one of the crucial elements of the offense. *United States v. Anderson*, 618 F.2d 487, 490 (8th Cir. 1980).

■ In order to be charged with the offense of conspiracy, Fanello need not have been in the Eastern District of Arkansas as long as one of his co-conspirators

committed an overt act in that district. In addition, to be guilty of the offense, he need only knowingly contribute his efforts in furtherance of the conspiracy. *United States v. Francisco*, 410 F.2d 1283, 1288 (8th Cir. 1969); see *Nassif v. United States*, 370 F.2d 147 (8th Cir. 1966). We conclude that the variance, if there was one, did not affect Fanello's substantial rights. The government's proof established all the crucial elements of the conspiracy.

The judgment is affirmed.

---

**7.** This Court notes, as we stated in *United States v. Sanders, supra*, 547 F.2d at 1043, "[p]rosecutors may strike hard blows but not foul ones." In cases such as this, injudicious remarks of the prosecutor may bring him or her perilously close to invading the defendant's rights. This is a risk that the prosecution would do well not to take in future cases.

**8.** Mears did testify, however, that Fanello had told him that he had flown over the landing site "and how good it was and how secluded it

was" (Tr. 174–75). The flight over the landing site, we think, was an act done "in" the Eastern District of Arkansas. *Cf. Grace v. MacArthur*, 170 F.Supp. 442 (E.D.Ark.1959) (service of process in an airplane flying over Arkansas suffices to confer jurisdiction over the person served). In this instance, at least, the maxim *cuius solum, eius usque ad caelum*, is well taken. Whether the remainder of the phrase— *et ad inferos*—is equally apt is a question we do not reach here.