UNITED STATES of America, Appellee,

v.

John J. VITALE, Appellant.

No. 83–1416.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1983.

Decided Feb. 29, 1984.

Rehearing and Rehearing En Banc
Denied March 27, 1984.

Shaw, Howlett & Schwartz by Joseph Howlett, Clayton, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., Edward L. Dowd, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, ROSS and FAGG, Circuit Judges.

ROSS, Circuit Judge.

John J. Vitale was indicted by a grand jury for distributing, and conspiring to distribute, two ounces of cocaine in violation of 21 U.S.C. §§ 841, 846 (1981). The defendant was tried before a jury and found guilty on both counts of the indictment. The district court[1] sentenced Vitale to ten years imprisonment on each count, with the sentences to run concurrently, and imposed a ten year special parole term. The defendant appeals his conviction alleging that several errors were committed by the district court. For the reasons stated herein, we affirm the conviction.

*Facts*

In August 1982, Ron Hannah, a confidential informant for the Drug Enforcement Administration Task Force (DEA), contacted Robert Bruner and requested to purchase some cocaine. Subsequently, Bruner spoke to the defendant, Vitale, who informed him that he had two to four ounces of cocaine.

Later that evening Bruner received a call from Hannah, the DEA informant. Bruner told Hannah that he couldn't talk because his "coke man" was there. As a result of this statement two DEA officers surveilled Bruner's residence, and saw a Mercury Marquis that was registered to the defendant.

After the call, the defendant left Bruner's home. Bruner tested some of the cocaine and discovered it was of poor quality. He telephoned Vitale at 11:00 p.m. to notify him of the problem, but told the defendant not to worry because the drugs were not for his personal consumption. The call was verified by Continental Telephone Company records.

The next day Bruner delivered ten pounds of hashish to Hannah, and informed him that he would sell him the cocaine, provided Hannah paid off an outstanding $1,000 debt. Hannah agreed to come up. with the money. When Bruner went to make the exchange he was arrested. Subsequently, he agreed to cooperate with the DEA by becoming an informant.

On August 18, 1982, Bruner telephoned Vitale and asked if he had "any more C," referring to cocaine. The defendant asked Bruner whether he had gotten rid of the other two ounces. Bruner responded affirmatively and told Vitale that he just wanted to know if he could get more. The defendant then said "not right now, I'm waiting on some."

On September 16, 1982, the defendant was indicted for the August 16 transaction, based upon Bruner's testimony, and the recorded telephone conversation.

On September 20, 1982, Neal Spencer was also arrested as a result of Bruner's cooperation with the government. After his arrest, he too agreed to cooperate with the DEA.

In November 1982, Spencer was contacted by the defendant who wanted to meet with him. At Vitale's request, they went for a ride together in the defendant's truck. During this drive, Vitale told Spencer that he was going to beat the case against him because no one saw him deliver the cocaine, and that "Bob [Bruner], out of all the people he dealt with, would be the last one to turn him in to the DEA." The defendant also told Spencer that the "best way * * * to deal in drugs, would be to do it on a one-to-one basis, not use the telephone."

At trial, the defendant testified that he never delivered cocaine to Bruner, although

---

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri.

he admitted being at Bruner's house on August 16, 1982. He alleged that he went to Bruner's residence in order to look at some Uzi submachine guns, which he refused to purchase because they were stolen. The defendant also testified that the first time he met Neal Spencer was at Bruner's home, where they discussed sports.

Spencer was called as a rebuttal witness and testified that he met Vitale at a restaurant, and that they discussed a 150 pound marijuana sale, not sports. Spencer also testified he saw an Uzi submachine gun at Vitale's house, and that the defendant told him he had obtained it from Bruner. This evidence was admitted without objection by defense counsel.

*Issues*

On appeal the defendant raises five issues: (1) whether the court erred in admitting the post-indictment statements made to Spencer; (2) whether the court erred in admitting evidence of other crimes; (3) whether the court erred in allowing information regarding agreements with government witnesses to be withheld until the weekend before trial; (4) whether the court erred in refusing to order the government to disclose the defendant's oral statements made to Bruner and Spencer; and (5) whether the court erred in submitting the conspiracy count to the jury.

*Discussion*

A. *Admission of Post-Indictment Statements*

■ It is well established that government agents cannot deliberately elicit incriminating statements from an accused after he has been indicted, in the absence of his attorney. *See Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). To do so would violate the accused's sixth amendment right to counsel. *Id. See also United States v. Criswell,* 696 F.2d 636, 639 (8th Cir.1983).

The appellant's position is that after he was indicted, Spencer, an agent of the government, solicited incriminating statements from him, and that those statements

should have been excluded from evidence. We reject the defendant's position.

■ First, the issue was not properly preserved for appeal because no objection was made at trial to the admission of the testimony. FED.R.EVID. 103; *see United States v. Wagoner,* 713 F.2d 1371, 1376 (8th Cir.1983). Furthermore, we cannot say that appellant's claim amounts to plain error under FED.R.CRIM.P. 52(b). *See United States v. Price,* 464 F.2d 1217, 1219 (8th Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 522, 34 L.Ed.2d 489 (1972). Finally, there is nothing in this case to suggest that the incriminating statements were "deliberately elicited." Rather, the evidence shows that the appellant volunteered the statements to Spencer.

B. *Admission of Other Crimes Evidence*

The appellant further contends that Spencer's testimony regarding the 150 pound marijuana sale, and the Uzi submachine gun, was impermissible evidence of other criminal acts prohibited by FED.R. EVID. 404(b). He alleges that although the testimony was not objected to, the issue is appealable because it is plain error under FED.R.CRIM.P. 52(b).

As stated above, where the admission of evidence is not objected to at trial, the issue is not properly preserved for appeal. *See Wagoner, supra,* 713 F.2d at 1376. As one court has stated:

Objections caution the opposing party to prevent error and avoid misconduct and alert the court to take corrective action * * * [citation omitted]. The defendant may not allow error to go uncorrected and then ask this court to reverse his conviction.

*United States v. Berry,* 627 F.2d 193, 199 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

■ As to the merits of this issue, we are not persuaded that the evidence admitted was prohibited by FED.R.EVID. 404(b). Appellant testified that he met Neal Spencer at Bruner's home and discussed sports, and that he would not purchase the Uzi

submachine gun from Bruner because it was stolen. Spencer testified that he met Vitale at a restaurant to conduct a drug deal, and that he had seen an Uzi submachine gun in Vitale's house. This rebuttal testimony directly contradicted Vitale's testimony. "Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit * * * evidence tending to contradict the specific statement * * *." *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir.1978). We cannot say that the admission of Spencer's testimony was an abuse of discretion by the district court, or that it amounted to plain error. *See Price, supra*, 464 F.2d at 1219.

### C. *Pretrial Discovery of Government Witnesses*

Vitale's next allegation is that the district court erred in failing to order the pretrial disclosure of Spencer, as a government witness, until shortly before trial. Our examination of this issue discloses no basis for relief.

■ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the government's failure to disclose favorable evidence specifically requested by the accused, violated due process. However, this court has recognized that discovery matters are committed to the sound discretion of the district court, and are reviewable only upon a showing of an abuse of discretion. *See United States v. Pelton*, 578 F.2d 701, 707 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978); *United States v. Crow Dog*, 532 F.2d 1182, 1189 (8th Cir.1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977). Furthermore, an error by the district court in administering the discovery rules is reversible only if the error is shown to prejudice the substantial rights of the defendant. *See Crow Dog, supra*, 532 F.2d at 1189.

■ In this case, the defendant sought a list of all prospective prosecution witnesses who had agreements with the government. The defendant's initial request for this information was made October 7, 1982, prior to his incriminating conversation with Spencer. On October 22, 1982, the government agreed to provide the requested information shortly before trial. On November 17, 1982, Magistrate Bahn ordered the names to be disclosed four days before trial. The district court balanced the competing interest of providing the defendant with the information needed for a full defense, against the need to protect the government witnesses, and upheld the magistrate's recommendation. The government complied with the court's order.

We cannot say that the district court abused its discretion in this regard. *See Crow Dog, supra*, 532 F.2d at 1189. Nor do we believe that any substantial right of the defendant has been prejudiced. *Id.*[2]

### D. *Providing Statements made by the Defendant to the Informants*

The appellant claims that the government failed to comply with FED.R.CRIM.P. 16, by not disclosing the substance of the statements made by him to Robert Bruner and Neal Spencer. The rule is clearly not applicable in this case.

■ Rule 16 requires the government to disclose "the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest *in response to interrogation by any person then known to the defendant to be a government agent* * * *." FED.R.CRIM.P.

---

**2.** The government asserts that it became aware of the Spencer-Vitale conversation four days before trial, and that this information was immediately relayed to the defense counsel. Assuming this to be true, no substantial right of the accused was prejudiced. The information sought regarding Spencer was not available until shortly before trial. The district court's order requiring that the names be disclosed shortly before trial cannot be said to have prejudiced the defendant.

16(a)(1)(A) (emphasis added). Here, the defendant did not know that Bruner or Spencer were government informants when he made the incriminating statements. Appellant's claim in this regard is, therefore, without merit.

### E. *The Conspiracy Count*

The appellant's final claim is that there was insufficient evidence to support a conspiracy charge. In evaluating the sufficiency of the evidence to uphold a verdict, we must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences which may be drawn. *See United States v. Burchinal,* 657 F.2d 985, 996 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Sullivan,* 618 F.2d 1290, 1295 (8th Cir.1980).

■ Vitale contends that the government failed to prove an overt act in furtherance of the conspiracy, and therefore this charge is infirm. The premise for this claim is that the only government witness adduced as to the actual transfer of cocaine, was Robert Bruner, and therefore it is the defendant's testimony against the informant's.

Vitale's argument that his testimony contradicted Bruner's, thereby nullifying its probative value, is without merit. The issue of whether Bruner or Vitale was telling the truth, was a question of credibility for the jury to decide. *See Sullivan, supra,* 618 F.2d at 1295. Bruner testified that Vitale delivered the cocaine to him, and knew it was not for his personal consumption. The jury chose to believe Bruner's testimony, which was sufficient to support the conviction. That determination will not be disturbed.

*Conclusion*

We have examined the appellant's remaining arguments and find them to be without merit. Accordingly, we affirm his conviction.