**UNITED STATES of America, Appellee,**

v.

**Charles Edward WADE, Appellant.**

**No. 83–1994.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1984.
Decided Aug. 6, 1984.

Gage & Tucker, Douglas S. Laird, Kansas City, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., John R. Osgood, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HENLEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Charles Edward Wade appeals his conviction for armed robbery of a federally insured Savings Association in Warrensburg, Missouri, in violation of 18 U.S.C. § 2113(a) & (d) (1982), and 18 U.S.C. § 2 (1982). He argues primarily that the in-court identification by one of the Savings Association employees violated his fifth amendment rights and that the evidence is insufficient to support the verdict. He also argues that two coke bottles and a revolver found in a van in which there was testimony that Wade had been riding should have been excluded from evidence and that the district court [1] erred in failing to give an accomplice testimony instruction. We affirm.

---

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

Two individuals robbed at gunpoint the First State Savings Association in Warrensburg on December 17, 1982. Gerry Ann White testified that she had picked up Wade and Freddy Amrine in a borrowed brown van and drove them to Warrensburg that morning. On the way she stopped and bought two cokes and gave one to Amrine and one to Wade. She testified that Amrine said the purpose of the trip was to make money and that Wade told Amrine "you will have to teach or tell me how to spend big money." She also testified that Wade had a revolver and Amrine had a small, rust-colored .22. When they arrived in Warrensburg, they drove around a bank with the word "First" in the name and Amrine told her to park the van behind the bank and leave the keys in it. She was to meet them later at a dormitory parking lot on the Central Missouri State Campus, a block and a half away.

Four employees of the Savings Association testified. They stated that two black males were involved in the robbery. One was tall, was wearing a green ski mask and street shoes and carried an automatic and a briefcase. The other was short and stocky, was wearing a blue ski mask and had a revolver with a six-inch barrel. One of the employees, Michelle Baker, identified Wade as one of the robbers during her testimony.

Douglas Mitchell, a Warrensburg resident, chased the two robbers as they ran from the scene, but dropped to the ground when a gun was pointed at him. He then saw a brown van speeding from the area. The van was discovered by authorities in the dormitory parking lot. A highway patrol officer searched the van and seized a revolver and two coke bottles. A fingerprint specialist for the FBI identified fingerprints from one of the coke bottles as those of Wade. The prints from the other bottle were those of Amrine.

White testified that she was in the dormitory lounge when Wade and Amrine came

in and Amrine asked her to get rid of a ski suit or a sweat suit which she disposed of in a trash bin. When police arrived she gave her consent for search of the van.

An employee of the college testified that a week or so following the robbery he found a green ski mask and a blue ski mask and some gloves in the science building. An FBI lab employee testified that the hairs in the blue ski mask exhibited the same characteristics as those of Wade, and that they could be his hairs, but that this was not true with respect to those from the green ski mask. When Wade was arrested, he was wearing tennis shoes with a distinctive star which were similar to the shoes worn by one of the robbers in the bank camera photograph.

## I.

Wade argues that the identification by Michelle Baker was not reliable and was tainted by an improperly suggestive confrontation between the witness and Wade when, outside the courtroom before her testimony, she pointed out Wade, who was then in the courtroom. We have considered such issues on several occasions. *United States v. Henderson,* 719 F.2d 934 (8th Cir.1983); *Ruff v. Wyrick,* 709 F.2d 1219 (8th Cir.1983); *United States v. Sanders,* 547 F.2d 1037 (8th Cir.1976), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2679, 53 L.Ed.2d 273 (1977); *Sanchell v. Parratt,* 530 F.2d 286 (8th Cir.1976); *United States v. Dailey,* 524 F.2d 911 (8th Cir.1975).

■ Whether an accused's due process rights have been violated is a two step inquiry.

> The first step is to determine whether the challenged confrontation between the witness and the suspect was "impermissibly suggestive." If so, the second inquiry is whether, under the totality of the circumstances of the case, the suggestive confrontation created "a very substantial likelihood of irreparable misidentification."

*Henderson,* 719 F.2d at 936 (citations omitted). *See also Graham v. Solem,* 728 F.2d 1533, 1541 (8th Cir.1984) (en banc). Relia-

bility is the "linchpin" of the test. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In determining whether an identification is reliable, we have looked to the five factors outlined in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972).

As pointed out in appellant's brief, we reversed denial of a habeas corpus petition in *Sanchell, supra,* because the witness had viewed the defendant in court at a preliminary hearing, and in *Dailey, supra,* we reversed a conviction where the witness' identification testimony was based on an improper photographic display. Wade's complaint is really that there was a "show-up" as that term is defined in *Sanders, supra, i.e.,* a single person is presented as a suspect to a viewing eyewitness. 547 F.2d at 1040. The particular circumstances in this case, however, do not require us to reach all the issues posed by Wade concerning Baker's identification testimony.

■ In the first place, the record reveals simply that while she was on the stand, Baker was asked if she could identify the robber and she pointed out Wade. She was then shown a photographic display and picked Wade from the group of photographs. This was the same display from which she earlier had been unable to identify Wade. When asked why she felt she could now identify Wade, when previously she had been unable to identify him from the photo display, she stated that when she was standing outside the courtroom before her testimony she was asked if she saw the robber. Wade, who was in the courtroom, looked up, and she remembered his eyes, and identified him. It is this question asked of Baker while she was outside the courtroom that Wade claims is an impermissibly suggestive confrontation. We believe that this differs substantially from the "show up" confrontations of which we have been critical. *See Graham v. Solem,* 728 F.2d at 1542; *Henderson,* 719 F.2d at 937; *Ruff,* 709 F.2d at 1220 n. 2; *United States v. Cook,* 464 F.2d 251, 253 (8th Cir.),

*cert. denied,* 409 U.S. 1011, 93 S.Ct. 457, 34 L.Ed.2d 305 (1972). Here we have a situation very similar to that in *United States v. Freie,* 545 F.2d 1217, 1224 (9th Cir.1976), *cert. denied, Gangadean v. United States,* 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977), where shortly before testifying the witness was asked if he could identify the defendant. To inquire of a witness in a nonleading fashion, shortly before she takes the stand, whether she can identify a person, which is the same question she will be asked while testifying, is not a procedure that we believe to be impermissibly suggestive. Accordingly, we conclude that the first step in *Manson, supra,* has not been satisfied.

■ Furthermore, Baker's in-court identification of Wade was subjected to vigorous cross-examination and impeachment with the government admitting its weakness in argument. Baker's testimony contained inconsistencies, specifically that Wade did not have facial hair, which was contrary to other testimony. The effective cross-examination of Baker substantially weakened her identification testimony. On cross-examination the defense brought out that Baker had failed to identify Wade on two occasions when photo spreads were presented to her. In its brief the government states that Baker's testimony was at best a gratuitous piece of evidence that "probably detracted from rather than added to the government's case." In closing argument the government conceded that Baker could not identify Wade the first time, stating simply that the jury should weigh her testimony for what it is worth. We believe that the evaluation of Baker's testimony was a jury issue, and that the totality of the circumstances was not such that Wade's due process rights were violated.

There was strong evidence of Wade's participation in the robbery from White's testimony, the fingerprints on the coke bottle, the photographs of the robbery, the hair comparison and the ski mask. If there was any error in the admission of Baker's testimony, we believe it was harmless beyond a reasonable doubt. *See United States v. Hasting,* 461 U.S. 499, ——, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

Wade makes the related argument that under the circumstances in this case we should hold that there is a constitutional right to a lineup. Wade admits, however, that in *United States v. Ostertag,* 619 F.2d 767, 771 (8th Cir.1980), we determined that there was no such right. Because there was a doubtful witness and some two and a half months between the robbery and the trial, he argues that a lineup should have been arranged. We are unwilling to expand the rule in *Ostertag* to the extent urged by Wade.

II.

Wade argues that there was insufficient evidence to support the jury's verdict of guilty. He argues that White's testimony was not credible because of her inability to testify truthfully and because she had been granted immunity from prosecution. He further argues that the fingerprint on the coke bottle and the hair specimen testimony constitute "only barely circumstantial evidence."

■ The question of credibility is for the jury to decide, not the reviewing court. *United States v. Snider,* 720 F.2d 985, 993 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984); *United States v. Sullivan,* 618 F.2d 1290, 1295 (8th Cir.1980). *Cf. Foster v. California,* 394 U.S. 440, 447, 89 S.Ct. 1127, 1130, 22 L.Ed.2d 402 (1969) (Black, J., dissenting). When an attack is made upon the sufficiency of the evidence, the jury's verdict must be sustained if there is substantial evidence, viewed in the light most favorable to the government, to support it. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Vitale,* 728 F.2d 1090, 1094 (8th Cir.1984); *United States v. Grego,* 724 F.2d 701, 704 (8th Cir.1984); *United States v. Henneberry,* 719 F.2d 941, 945 (8th Cir.1983), *cert. denied,* ——

U.S. ——, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984); *Sullivan,* 618 F.2d at 1295. The government is entitled to the benefit of all reasonable inferences. *Vitale,* 728 F.2d at 1094; *Grego,* 724 F.2d at 704. While most of the evidence presented was circumstantial, the testimony of White coupled with the fingerprint and hair specimen testimony, the ski masks, the guns, the bank photos and the testimony of the individual seeing the van drive away, leaves no doubt in our mind that there was sufficient evidence to submit the question of Wade's guilt to the jury.

### III.

■ Wade argues that the coke bottles and revolver should have been excluded. It is not necessary that we reject Wade's argument on the basis that he had not complied with pretrial procedures requiring that such motions be filed prior to trial. The district court hearing Wade's motion in the midst of trial, concluded that the consent given by White to search the van was valid, and that Wade did not have a legitimate expectation of privacy in the van. Wade's argument that White was not the owner of the van, and therefore could not have given consent, is without merit. A consent search is valid where permission to search "was obtained from a third party who possessed common authority or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). White was driving a van owned by the woman with whom she shared an apartment. She had made some payments on the mortgage on the van, had contributed to its maintenance and not only had her own set of keys to the van, but also kept some of her property in the van. The evidence shows that White had borrowed the van that day from its owner and that Wade was in it because of arrangements that White had made earlier with Amrine. Under these circumstances, the district court did not err in finding that consent had been given and in admitting this evidence. *See Rakas v. Illinois,* 439 U.S. 128,

99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Matlock, supra; Marvin v. United States,* 732 F.2d 669, 675 (8th Cir.1984) and cases cited therein.

### IV.

■ Wade argues that the district court erred in failing to give an instruction that the testimony of an accomplice must be received with caution. He acknowledges that no objection was made at trial on this basis and urges the application of the plain error doctrine. The court instructed the jury that they were to view White's testimony with caution because of her immunity. We cannot conclude that there was plain error in failing to give the accomplice instruction which was not requested at the time of trial. *See United States v. Cooper,* 596 F.2d 327, 330 (8th Cir.1979).

Having carefully considered the arguments of Wade, the judgment of conviction is affirmed.