UNITED STATES of America, Appellee,

v.

Booker T. MASON, Appellant.

No. 81–5023.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1981.

Decided March 25, 1982.

738

Ronald P. Fischetti, John C. Lindsay, New York City (Henry Hammer, Anne C. Feigus, New York City, on brief), for appellant.

Craig C. Donsanto, Director, Election Crimes Branch, Public Integrity Section, Crim. Div., Washington, D. C. (Nancy L. Simmons, Public Integrity Section, Crim. Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before HAYNSWORTH, Senior Circuit Judge, and BUTZNER and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Booker T. Mason appeals his conviction for "vote-buying" in a South Carolina election held to elect both local and federal officials. He was indicted under the provisions of 42 U.S.C. § 1973i(c) and found guilty by a jury. He contends he solicited votes only for the county sheriff's race, not for any federal candidate, and therefore there was no jurisdiction to try him under the federal statute. He also contends there was not sufficient evidence that money given to the voters was in payment for voting. We disagree and affirm the judgment of the district court.

Mason was convicted on seven counts of an eight-count indictment; each count related to procuring the absentee vote of a different individual.

The absentee ballot of voter number one was obtained by Mason's daughter. Mason then went to the voter's house and asked if she had "gotten anything in the mail." The voter said yes and she marked her ballot, voting for Sheriff Roy Lee at Mason's suggestion. She then gave her ballot to Mason in an unsealed envelope and he gave her four dollars, stating "they told me to give it to you."

The second voter was stopped by Mason during a walk and was told to sign an application for an absentee ballot. The application was marked to indicate falsely that she would be on vacation on election day, but the voter did not recall thus marking the application and did not know who had. Mason returned later to her house, opened her mail containing the absentee ballot and gave it to her. After she received the ballot, voted and gave the ballot to Mason, she asked him if she was supposed "to get anything" and he handed her five dollars. Mason asked the third voter to apply for an absentee ballot, although she said she could have gone to the polls on election day. She marked the ballot in Mason's presence and asked him to help her mark the sheriff's race. After she returned the ballot to Mason in an unsealed envelope, he gave her four dollars.

The fourth voter was approached by Mason while working, and was asked to apply for an absentee ballot. The voter gave the ballot to Mason when it arrived, and Mason advised him which candidates to mark. The ballot was then returned to Mason, who subsequently gave the voter two dollars. The fifth voter also was asked by Mason to apply for an absentee ballot. The voter testified that after he received the ballot he did not mark it but that Mason marked it saying "we want Roy Lee in for sheriff." Mason then gave the voter five dollars.

Mason went to the home of the sixth voter and had him sign an absentee application. Mason returned when the ballot arrived. The voter described the procedure by which Mason marked the ballot. "[Mason] called out the names and asked me who I wanted to vote for, and I told him I didn't know anything. I didn't know none of the people. He put down who I wanted, I guess." The voter remembered Mason calling out Roy Lee's name, but did not remem-

ber any of the other candidates on the ballot. The voter was given three dollars after Mason marked the ballot and was given two dollars the next day. The seventh voter was also approached by Mason and given an absentee ballot application. After the voter received the ballot, Mason marked it for him and handed him three dollars.

Mason testified that he supported Sheriff Roy Lee in the election and was paid $300 to distribute absentee ballots and to transport voters to the polls. He admitted assisting 48 voters in the involved election and paying all of those named in the indictment. He contended at trial and on appeal, however, that he was performing a service for his friends and neighbors by helping to get out the vote and that there was no agreement to pay the voters for their votes; in each case the voter had cast his or her ballot before receiving any money from Mason. He also argues on appeal that the indictment was jurisdictionally defective for two reasons: one, Congress did not intend to include in section 1973i(c) offenses relating to "mixed" local/federal elections unless it can be shown that the offense related to the federal portion of the election, and two, if Congress did intend such result, section 1973i(c), as applied in this case, is unconstitutional because Congress has no authority to enact such legislation.

■ We quickly dispose of Mason's contention that he was not buying votes. He admits paying each voter named in the indictment after he or she marked an absentee ballot and gave it to him. He argues that there is no evidence of an agreement to vote in exchange for the payments—contending that the payment of a gratuity as contrasted to a bribe is not a violation of the statute. The jury was properly instructed concerning voting for a promise to pay money and the verdict essentially forecloses any argument over that as a factual issue. The evidence is more than sufficient to support the inference, which the jury obviously drew, that there was a pattern of promises and expectations by the voters that they would be paid after they voted

for the sheriff candidate supported by Mason. In view of this, it is not necessary to decide the legal issue of whether a gratuity to a voter without any agreement concerning his vote, can be a bribe.

■ Mason contends, nevertheless, that he could not validly be tried under section 1973i(c) because his activity related only to the sheriff's race. Here, again, he reads too narrowly both the statute and the facts presented to the jury.

Section 1973i(c) reads in part:

(c) Whoever knowingly or willfully ... pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: *Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for [federal office] . . . .

Thus the statute uncategorically proscribes payment or offers of payment for voting, whether in a purely federal election or a mixed federal/state election. There is no requirement that the payment or offer of payment be made specifically on behalf of a federal candidate or that a special intent to influence a federal race exist.

■ The power of Congress to regulate federal elections to prevent fraud or corruption is well-established, *Ex parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884), and clearly includes the power to regulate conduct which, although directed at non-federal elections, also has an impact on the federal races. *In re Coy,* 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274 (1888); *United States v. Barker,* 514 F.2d 1077 (7th Cir. 1975).

■ A section 1973i(c) violation is sufficiently established when the evidence discloses that proscribed conduct occurred and that the conduct "exposes the federal aspects of the election to the possibility of corruption, whether or not the actual corruption takes place and whether or not the persons participating in such activity had a

specific intent to expose the federal election to such corruption or possibility of corruption." *United States v. Bowman*, 636 F.2d 1003, 1011 (5th Cir. 1981).

Mason induced each voter to apply for an absentee ballot without regard to whether the voter actually met the requirements for absentee voting; he was present when each voter marked the ballot and in some cases actually marked all or part of the ballot for the voter; Mason also provided the voters with a varying quantum of advice as to how their ballots should be cast. Finally, Mason personally paid each voter and collected each absentee ballot; there is no evidence that any of the envelopes containing the ballots were sealed when Mason received them, and there is undisputed evidence that many of the envelopes were not sealed.

Mason's activities, while intended to influence only the local election, had an effect which reached beyond the local races to taint the federal election process. Such effect is squarely within the prohibitions of section 1973i(c), and therefore his convictions are affirmed.

AFFIRMED.