UNITED STATES of America, Appellee,

v.

Billy Wade KEY, Appellant.

No. 83–1494.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1983.

Decided Sept. 27, 1983.

Norman Wilkinson, Fort Smith, Ark., for appellant.

W. Asa Hutchinson, U.S. Atty., Steven N. Snyder, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

PER CURIAM.

Billy Wade Key appeals from his conviction of two counts of kidnapping in violation of 18 U.S.C. § 1201. Key raises five points on appeal. First, he argues that the district court did not properly apply Fed.R. Evid. 609 in allowing Key's prior convictions into evidence. Second, Key contends that the district court erred by refusing to grant a motion for a mistrial because a juror allegedly slept during closing arguments and during the giving of the jury instructions. Third, he argues that the district court should have compelled the government to conduct a line-up to counteract alleged improper influence a photo spread had on the witnesses. Fourth, Key contends the court erred in failing to grant his motion for a bill of particulars. Finally, Key argues that the government failed to provide the defendant with exculpatory information it allegedly had in its possession. We find the arguments unpersuasive and affirm.[1]

On January 13, 1983 Billy Wade Key was indicted on two counts of kidnapping Cynthia Carty and her two-year old daughter, Jennifer. On September 4, 1982, the day of the kidnapping, Key was seen at a gas station in Alma, Arkansas at approximately

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court, Western District of Arkansas.

6:30 a.m. and at an apartment complex in Alma at 8:30 a.m. Lynette Blasingame testified that she was working at her job at the Kentucky Fried Chicken in Alma on the night of September 4, 1982. She stated that Key entered the restaurant, placed his order and received his meal at about 8:30 p.m. A short time later, Cynthia Carty and her daughter Jennifer entered, picked up their order, and walked out to their car. Ms. Blasingame testified that she observed Key follow Mrs. Carty out to her car where he appeared to be talking to her.

Cynthia Carty testified that after receiving her order on the night of September 4, she and her daughter proceeded to their car. Before she reached the car door, Key approached her, lifted his shirt and showed her a gun that was stuck in his belt. When Mrs. Carty refused Key's order to get into the car, he grabbed her arm and told her that he was desperate, had to have her car and that he would kill her if she did not comply. Key then pushed Mrs. Carty and her daughter into the car, got in himself, and proceeded to Oklahoma City, Oklahoma, where they arrived at approximately 1:15 the morning of September 5. A short while later, Key drove Mrs. Carty and her daughter to a U-Totem convenience store where they were released.

Following jury trial, on March 15, 1983 Key was found guilty on both counts of the indictment. He was sentenced to twenty years imprisonment on Count 1 and fifteen years on Count 2, the sentences to be served concurrently.

Prior Convictions.

Key asserts that the district court erred in allowing into evidence Key's prior convictions for (1) aiding and abetting forgery, July 18, 1969; (2) burglary in the second degree, November 1, 1975; (3) escape, February 28, 1979; and (4) escape, September 19, 1980. Specifically, Key contends the

district judge did not properly follow Fed.R. Evid. 609[2] in making his determination. He claims that the judge merely used a ten year time limit and did not weigh the probative value against the prejudicial effect of the prior convictions.

Before Key took the stand defense counsel sought an advance ruling as to what, if any, prior convictions would be allowed to impeach Key's testimony. The court refused to rule that all previous convictions would be excluded and indicated that "certain of the convictions that the rule allows" could be used. Thereafter, Key testified on direct examination concerning the convictions in question.

■■■ We note that in this circuit a defendant generally is not entitled to an advance determination of the scope of cross-examination concerning convictions prior to taking the stand. *United States v. Fay,* 668 F.2d 375 (8th Cir.1981); *United States v. Burkhead,* 646 F.2d 1283 (8th Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United States v. Johnston,* 543 F.2d 55, 59 (8th Cir.1976). Where given an advance ruling is tentative and when a defendant on direct examination testifies to a prior conviction, alleged error in the advance ruling may be waived. *United States v. Cobb,* 588 F.2d 607 (8th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

■■ Undoubtedly, the better practice in applying the 609(a)(1) test is for the trial court to make an on-the-record finding that the test weighs in favor of or against admitting the prior conviction, *United States v. Jackson,* 696 F.2d 578, 589 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *United States v. Mahone,* 537 F.2d 922 (7th Cir.1976), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), but such a finding at times may not be made with confidence

---

**2.** Rule 609(a) provides:

General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but

only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant....

until the defendant has testified. *Cf. United States v. Halbert,* 668 F.2d 489 (10th Cir.1982).

In any event, reviewability assumed, we find no reversible error. The weighing of probative value against prejudicial effect is committed to the sound discretion of the trial court, and absent an abuse of discretion evidentiary rulings will not be disturbed on appeal. *United States v. Foley,* 683 F.2d 273 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982). Here, even though the trial court did not explicitly state that it was balancing the competing interests, a bench conference was called and counsel did couch their arguments in terms of prejudice and probative value. In these circumstances, we cannot say that the district court either abused its discretion in announcing it would admit some of the prior convictions or that it improperly failed to exercise discretion.

### The "Sleeping Juror."

Appellant next contends that the district court committed error by failing to grant a mistrial, or at least replace one of the jurors with an alternate, because the juror had his eyes closed during closing arguments and during the giving of the jury instructions. At no time did appellant request the trial court to replace the alleged "sleeping juror" with an alternate and he also did not object when the court discharged the alternate juror.

Even assuming that appellant properly preserved the issue on appeal, we do not believe the district court abused its discretion. The decision of whether or not to remove a juror is normally vested in the wise discretion of the trial court. If the record shows a legitimate basis for his decision, there is no abuse of that discretion. *United States v. Peters,* 617 F.2d 503 (7th Cir.1980). Here, the trial court made the following findings:

Well, Mr. Doss (Juror Number 3) sometimes closes his eyes. I don't think he's asleep. All right. Let me also say something else. And this is really the reason I

wanted to—a bench conference. There was an objection or a request for a mistrial because Juror Doss appeared to be asleep. This jury has been here for a good long period of time. I have noted that Mr. Doss does close his eyes. Mr. Doss though, has been on a number of cases and is a very good juror. I believe, in spite of that, he's listening. I have observed Mr. Doss throughout the course of the trial today and I believe that he did hear all of the evidence. I think he has a tendency, when the closing arguments start, to close his eyes and listen. . . .

The record clearly shows a legitimate basis for the district court's decision, based both on present and past experiences with the juror. For these reasons, we believe appellant's argument is without merit.

### The Failure to Hold a Line-Up.

In a pretrial motion, appellant moved to compel the government to conduct a line-up for all witnesses who had viewed certain photographic spreads in order to counteract any improper influence had upon them. The district court did not do so. Even though there is no constitutional right to compel the government to conduct a line-up, *United States v. Estremera,* 531 F.2d 1103, 1111 (2d Cir.), *cert. denied,* 425 U.S. 979, 96 S.Ct. 2184, 48 L.Ed.2d 804 (1976); *United States v. Ostertag,* 619 F.2d 767 (8th Cir.1980), many times a court can and should compel the government to do so if the interests of justice and fair play require it. *United States v. Lewis,* 547 F.2d 1030 (8th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). However, in view of the extensive and positive identification of Key, it is clear that the district court did not abuse its discretion in refusing appellant's motion. Four out of five government witnesses identified defendant from the photo spread. Mrs. Carty spent over five hours with Key in a car in close proximity to the appellant and stated that there was no doubt Key was the person who kidnapped her. In light of the strong

evidence of identification, we cannot say that the district court abused its discretion.

### Bill of Particulars.

As his next point of error, appellant asserts that the district court erred in failing to grant a motion for a bill of particulars pursuant to Fed.R.Crim.P. 7(f). In the motion, appellant sought the nature of the charges against the defendant, the time and place of the wrongdoing, the acts alleged to have resulted in a violation of the laws of the United States, and the manner in which the act occurred. In comparison, the indictment contained the date and place of the kidnapping. It named Cynthia and Jennifer Carty as the persons who had been kidnapped, and alleged that they were taken from Alma, Arkansas to Oklahoma City, Oklahoma.

An indictment is sufficient if it informs the defendant of the charge and permits him to plead his conviction as a bar to another prosecution. *United States v. Buffington,* 578 F.2d 213 (8th Cir.1978); *United States v. Matlock,* 675 F.2d 981 (8th Cir.1982). Federal trial courts have always had broad discretion in ruling upon requests for bills of particulars. *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). We believe that in these circumstances, the indictment specified sufficient facts to avoid surprise to appellant and was sufficient to bar future prosecution. Therefore, the district court did not abuse its discretion in refusing the motion.

### Request for Exculpatory Material.

The appellant generally requested the government to provide the defense with all exculpatory information in its possession. The government responded that it had no such exculpatory material. Appellant argues that, in two particular areas, the government had material in its possession which it should have turned over to the defense. First, Key contends the government failed to inform him that, in the initial descriptions of the witnesses, the hair color of the kidnapper was somewhat lighter than Key's. Second, appellant asserts

that the government failed to inform him that the kidnapper purchased gasoline at a convenience store in Oklahoma City just prior to releasing the victims. If he had known this, Key claims he could have tracked down the convenience store operator in order to get her testimony about the kidnapper's identity. We believe appellant's argument is without merit for the following reasons.

The suppression of evidence favorable to the accused by the prosecution violates due process where the evidence is material to either guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The standard for defining materiality differs depending upon what type of request the defense makes. *United States v. Agurs,* 427 U.S. 97, 103–07, 96 S.Ct. 2392, 2397–99, 49 L.Ed.2d 342 (1976). Where, as is the case here, the defense makes only a general request, the omitted evidence is material only if it creates a reasonable doubt as to the defendant's guilt. *Id.* at 112, 96 S.Ct. at 2401. "If there is no reasonable doubt about guilt whether or not additional evidence is considered, there is no justification for a new trial." *Id.* at 112–13, 96 S.Ct. at 2401–02.

Utilizing this standard, it is clear that the omitted evidence in this case is not material. In view of the strong evidence of identification, including four positive identifications and the victim's statement that there is absolutely no doubt that Key was the man who abducted her, the omitted material appears trivial at best. The omitted material does not create a reasonable doubt of appellant's guilt and therefore the government's failure to provide the evidence before trial does not require reversal.

Affirmed.