**UNITED STATES of America, Appellee,**

v.

**Alton CAMPBELL, Appellant.**

**No. 87–1935.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1988.

Decided April 29, 1988.

Rehearing and Rehearing En Banc
Denied June 13, 1988.

Thomas A. Martin, Jasper, Ark., for appellant.

Larry R. McCord, Fort Smith, Ark., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Alton Campbell appeals his conviction of two counts of paying or offering to pay voters for voting in violation of 42 U.S.C. § 1973i(c) (1982). Campbell, county judge of Newton County, Arkansas, was acquitted of twelve counts of vote-buying, one count of voting more than once, 42 U.S.C. § 1973i(e) (1982), and one count of conspiracy, 18 U.S.C. § 371 (1982). On appeal, Campbell argues that there was insufficient evidence to support the count relating to the ballot of Pamela Cross and that the district court[1] erred in replacing a juror with an alternate, in refusing to allow his counsel to cross-examine witnesses about witness fees received from the government, and in allowing testimony under the co-conspirator exception to the hearsay rule. We affirm the judgment of the district court.

Campbell was a candidate for re-election as county judge of Newton County, Arkansas at the general election on November 4, 1986, at which time a U.S. Senator and Representative and various state and county officers were to be elected. There was testimony that Campbell and Charles Clark, a candidate for Newton County sheriff, approached a number of individuals for purchase of their votes. There was also testimony that Dennis "Cotton" Holt, a precinct worker for Campbell, purchased absentee ballots from voters on behalf of Campbell, and that Campbell personally paid Pamela Cross $50.00 in exchange for a blank absentee ballot and Penny Ann Carter $30.00 for voting absentee. Ultimately, an indictment was filed charging Campbell with fourteen counts of vote-buying, one count of multiple voting, and one count of conspiracy. Charles Clark was named in eight counts of the indictment and Dennis Holt was charged in six counts. The case was tried to a jury and Campbell was convicted of the two counts involving Pamela Cross and Penny Ann Carter, but acquitted on all other counts. Clark and Holt were acquitted on all counts.

Following the second day of trial, FBI Agent Lynn Willett notified the district attorney that she had received a call from a citizen of Newton County, who informed her that one of the jurors, Robin Noell, was the son-in-law of two people from Newton County who were close to Campbell and had worked for him during the election. According to the agent and the district attorney, records in the case indicated that one of Noell's parents-in-law had picked up an absentee ballot and the other had picked up more than one ballot, perhaps as many as five. The caller also informed Agent Willett that Noell had received a culvert, which he had put to personal use, from the county judge through his father-in-law. The district attorney conveyed this information to the court on the third and final morning of trial.

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

After conclusion of the testimony, arguments of counsel and instructions, the jury was escorted to the jury room. The court had directed the jury not to begin deliberations until two of the fourteen jurors were excused and the marshal handed out the verdict forms to the remaining twelve. Over the objection of the defendants, the marshal then escorted Noell to the judge's chambers for questioning. Noell said he was aware that his parents-in-law knew Campbell, but did not know whether they had worked for him. The district judge was familiar with Newton County and aware of strong partisan feelings there; Republicans were usually very close to other Republicans, and Democrats very close to other Democrats. The district court believed that this information provided sufficient grounds to excuse Noell, and therefore did not question him about the culvert. The court discharged Noell and one other juror and directed the remaining twelve to begin deliberations.

After the jury had retired to consider its verdict, the court held a bench conference and made a record of the events surrounding Noell's removal. The parties had agreed that the court could decide whether to excuse Noell on the basis of this information, without the presentation of testimony. Campbell also agreed that once the court had spoken to Noell, it had no choice but to strike him. Campbell objected specifically to the court's decision to question Noell on the basis of the district attorney's report and the court's knowledge of the strong partisan feelings in Newton County.

### I.

The Federal Rules of Criminal Procedure provide that alternate jurors shall replace jurors who "become or are found to be unable or disqualified to perform their duties." [2] We have held that rulings on the qualification of jurors will not be disturbed "absent a clear showing of abuse of the sound discretion vested in the district court." *United States v. Brown,* 540 F.2d 364, 379 (8th Cir.1976). The decision to excuse a juror for cause and substitute an alternate is therefore vested in the district court's discretion, *United States v. Lewis,* 759 F.2d 1316, 1350 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985), and will be upheld if the record shows a legitimate basis for the court's decision. *United States v. Key,* 717 F.2d 1206, 1209 (8th Cir.1983).

The district court did not abuse its discretion in questioning juror Noell. The words "or are found to be [disqualified]" were added to Rule 24(c) in a 1966 amendment to make clear that an alternate may be called when the court discovers during trial that a regular juror was disqualified to serve at the time he was sworn. Fed.R.Crim.P. 24(c) advisory committee's note (citing *United States v. Goldberg,* 330 F.2d 30 (3d Cir.), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed. 2d 497 (1964)). A district court has the discretion to question a juror whose qualifications have been called into doubt during trial in order to resolve such matters as they arise and ensure an impartial and competent jury. *See, e.g., United States v. Lustig,* 555 F.2d 737, 745–46 (9th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977), 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978); *United States v. Zambito,* 315 F.2d 266, 269 (4th Cir.), *cert. denied,* 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963); *Banks v. United States,* 204 F.2d 666, 671 (8th Cir.1953), *vacated and remanded on other grounds,* 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710 (1955). The information provided by the district attorney, based upon Agent Willett's report and the records, raised a seri-

---

**2.** Fed.R.Crim.P. 24(c) provides:

Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. * * * Each side is entitled to 1 peremptory challenge in addition to those otherwise allowed by law if 1 or 2 alternate jurors are to be impanelled * * *.

ous question about Noell's impartiality, and the court did not err in investigating the matter. *Cf. United States v. Dean,* 667 F.2d 729, 731 (8th Cir.), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982) (en banc) (court could have investigated "rumor" of juror bias had it been informed of note received by counsel).

▪ Nor did the district court abuse its discretion in excusing Noell. Campbell argues that the government did not show cause for striking Noell, and that by removing him the court in effect gave the government an additional peremptory strike. This argument simply misses the mark. The district court took up the matter on its own motion and removed Noell in the exercise of its discretion under Rule 24(c). *E.g., Lewis,* 759 F.2d at 1350. Noell confirmed that he was aware his parents-in-law knew Campbell, and the records mentioned by Agent Willett and the district attorney indicated that Noell's in-laws had worked for Campbell during the election. The district judge also knew that partisan feelings in Newton County ran high. The court was concerned that any of these factors might affect Noell's impartiality, and it did not err in excusing Noell on this basis. *Cf. United States v. Perkins,* 748 F.2d 1519, 1532 (11th Cir.1984) (relationship between juror and defendant, albeit remote, can form basis of challenge for cause); *Stokes v. Delcambre,* 710 F.2d 1120, 1128 (5th Cir.1983) (juror who knew defendant sheriff and attended political functions involving him properly excused).[3]

▪ The district court also did not violate the sixth amendment's "fair cross-section" requirement by questioning and excusing Noell and a number of potential jurors in part on the basis of the court's familiarity with Newton County politics.

There has been no allegation that Newton County residents are systematically excluded from, and therefore underrepresented in, venires from which juries for the Western District of Arkansas are selected. On this ground alone, Campbell's sixth amendment claim should be dismissed. *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 1764–65, 90 L.Ed.2d 137 (1986). Moreover, this case is narrowly focused upon conduct surrounding the 1986 campaign and November election in Newton County, and the district court was justifiably concerned that residents of this small rural county and others closely associated with them might be predisposed in their views of the case. The court's experience with the strength of partisan feelings in Newton County merely reinforced this concern. The court questioned and excused Noell and the others on grounds related solely to their ability to serve as jurors in this particular case, and no sixth amendment "fair cross-section" claim can be predicated upon such action. *See id.* 106 S.Ct. at 1765–66.

▪ Finally, we reject Campbell's argument that he was prejudiced because his attorney directed his efforts to the original twelve jurors, ignoring the alternates. We should not reward a lawyer's decision to concentrate on a few select jurors. Rule 24(c) states that alternates "shall have the same functions, powers, facilities and privileges as regular jurors." Reversal is not warranted merely because the substitution of an alternate changes the composition of the jury. *See United States v. Giarratano,* 622 F.2d 153, 157 (5th Cir.1980). The district court did not err in removing Noell.

## II.

▪ Campbell next argues that there was insufficient evidence to support his

---

**3.** The central thrust of Campbell's argument is the removal of juror Noell. Noell was questioned by the court in chambers without counsel present and without a record being made. After questioning Noell and excusing him, the district court later made a record in open court outside the presence of the jury, but before counsel and the parties. Campbell has not objected to this procedure, except to argue that the court should have conducted an evidentiary hearing to resolve the matter. The statements of the court and the district attorney on the record, coupled with Campbell's agreement that the presentation of testimony was not necessary, answer this argument. *See Lewis,* 759 F.2d at 1350. While the procedures used to ascertain the qualifications of a juror are within the discretion of the district court, we believe questioning the witness on the record with counsel present is a more desirable practice and would alleviate the possibility of procedural objections that have not been made in this case.

conviction under 42 U.S.C. § 1973i(c) for paying or offering to pay Pamela Cross to vote.[4] Campbell acknowledges that Cross testified that she gave Campbell her absentee voter statement and blank absentee ballot in return for $50.00. He argues, however, that there was no evidence Cross was paid for voting, because Cross testified that she did not personally complete the absentee ballot by marking her candidate selections. Campbell is alleged to have done so and he argues that even if he did, the only crime of which he could be convicted was voting more than once in violation of 42 U.S.C. § 1973i(e). Campbell emphasizes that a criminal statute must give fair warning of the conduct it prohibits. *See, e.g., Bouie v. City of Columbia,* 378 U.S. 347, 350–51, 84 S.Ct. 1697, 1700–01, 12 L.Ed.2d 894 (1964).

In considering the sufficiency of the evidence to support a jury verdict, we view the evidence in the light most favorable to the government, giving the government the benefit of all inferences which may logically be drawn therefrom. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Resnick,* 745 F.2d 1179, 1185 (8th Cir.1984). The evidence need not exclude every reasonable hypothesis of innocence, but simply "be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Wells,* 721 F.2d 1160, 1161 (8th Cir.1983) (quoting *United States v. Taylor,* 599 F.2d 832, 838 (8th Cir.1979)). This court may overturn the verdict only if the evidence is such that "a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986).

Pamela Cross testified that she signed an application for an absentee ballot at the county courthouse some time before the election and obtained an absentee ballot and a statement of absentee voter. She then went to a bridge in Jasper, Arkansas, where her husband was evidently filling the radiator of their vehicle with water. Campbell drove out and met Cross beneath the bridge. Cross then signed the statement and gave it and the blank ballot to Campbell in exchange for $50.00. The government offered Cross's application into evidence at trial.

The evidence, viewed in the light most favorable to the government, was plainly sufficient to convince the jury beyond a reasonable doubt that Campbell knowingly paid Cross $50.00 for the purpose of obtaining her blank absentee ballot and absentee voter statement. We reject Campbell's argument that this conduct did not constitute "paying for voting" within the meaning of section 1973i(c). The Fourth Circuit has held, and we agree, that section 1973i(c) plainly prohibits an individual from paying a voter and then filling out or helping the voter to fill out an absentee ballot. *United States v. Carmichael,* 685 F.2d 903, 908 (4th Cir.1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983); *United States v. Mason,* 673 F.2d 737, 739–40 (4th Cir.1982). Campbell's actions were equivalent to paying Cross for marking her ballot in accordance with his directions, and the statute gave Campbell fair warning that his conduct was unlawful. *See e.g., Bouie,* 378 U.S. at 350–51, 84 S.Ct. at 1700–01.

### III.

Campbell's third argument is that the district court violated his sixth amendment confrontation clause rights by refusing to allow him to cross-examine witnesses about witness fees they were to receive from the government. A defendant's confrontation clause rights are violated if he is prevented from exposing facts to

---

**4.** Section 1973i(c) provides:

Whoever knowingly or willfully * * * pays or offers to pay * * * for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: *Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for [specified federal offices].

There is no dispute that the November 4, 1986 general election was held in part for the purpose of electing candidates to federal offices specified in section 1973i(c).

the jury from which they could reasonably make inferences about the reliability of the witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). The availability of other opportunities during cross-examination to elicit the same information is significant in resolving the matter. *United States v. Wilson*, 787 F.2d 375, 386–87 (8th Cir.), *cert. denied*, —— U.S. ——, ——, 107 S.Ct. 197, 223, 93 L.Ed.2d 129, 151 (1986). The district court retains broad discretion to limit cross-examination beyond that necessary to satisfy the sixth amendment, *id.* at 386, and its decisions on such matters may be reversed only when there has been a clear abuse of discretion and a showing of prejudice to the defendant. *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984).

■ Counsel for Campbell attempted to cross-examine two government witnesses about fees they were to receive from the government, and in each instance the district court instructed the jury that all witnesses, whether called by the government or the defense, were entitled to a statutorily-prescribed witness fee plus mileage. The court then sustained objections to further questioning about these fees. Witness and mileage fees are provided by law to facilitate the attendance of witnesses and production of testimony at trial, and they are paid to witnesses for both the prosecution and defense. We do not believe that such payments give rise to any inference affecting credibility. There was no allegation that government witnesses would receive anything more for their testimony, nor did Campbell attempt to cross-examine them on the subject. Campbell was allowed to ask whether the government had either told the witnesses that charges for vote-selling would not be brought against them if they testified, or threatened legal action if the witnesses did not testify as the government wanted. Campbell was thus permitted to inquire whether the witnesses had a motive to favor the prosecution in their testimony. *See Van Arsdall*, 107 S.Ct. at 1435. The district court did not violate Campbell's confrontation clause rights nor abuse its discretion in limiting the cross-examination.

## IV.

■ Campbell's final argument is that the district court erred in allowing the testimony of Jack and Wanda Bough regarding statements made to them by Dennis Holt. Holt told the Boughs that he would give Campbell the absentee voter statements and ballots he had bought from them and that Campbell would finish filling them out. Campbell concedes that after *Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), a district court may consider the hearsay statements sought to be admitted in making the factual findings necessary to determine whether the statements are admissible under the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E). Reply Brief for Appellant at 3. *See Bourjaily*, 107 S.Ct. at 2782; *contra United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978). Campbell argues, however, that a district court may not rely solely on such statements to determine that a conspiracy has been established, and that the district court impermissibly did so here.

The Supreme Court expressly reserved ruling on this issue in *Bourjaily*, 107 S.Ct. at 2781–82, and it is not necessary for us to resolve the matter. Following the procedure outlined in *Bell*, 573 F.2d at 1044, the district court conditionally admitted the Boughs' testimony regarding Holt's statements. At the close of the evidence, it ruled that the testimony was admissible, finding that the government had proven by a preponderance of the evidence that a vote-buying conspiracy existed, that Campbell and Holt were members of the conspiracy, and that Holt's statements were made during the course and in furtherance of the conspiracy. *See Bourjaily*, 107 S.Ct. at 2778–79; *Bell*, 573 F.2d at 1043–44. We have reviewed the record, and we cannot say the district court erred in so finding. Non-hearsay testimony and documentary evidence was offered to show that Campbell and Holt, acting individually, bought absentee voting materials from various persons, including Pamela Cross, Penny Ann Carter, and the Boughs, and that Holt

was a precinct worker for Campbell. There was also evidence that Campbell and Charles Clark, acting together, negotiated with Joe and Teena Brown to purchase their absentee votes and those of their relatives—Roger, Delmar and Gwenda Brown—for $50.00 each. Campbell later paid Joe Brown $250.00 for the five blank absentee ballots. Together with Holt's statements that he would take the voting materials he had purchased from the Boughs to Campbell for completion, the evidence was sufficient to support the district court's finding that a vote-buying conspiracy had been established.[5]

The judgment of the district court is affirmed.

---

5. Holt's statements to the Boughs did not constitute an oral confession that he and Campbell had conspired to buy votes, and we therefore reject as groundless Campbell's argument that admission of the Boughs' testimony was prohibited by *Bruton v. United States,* 391 U.S. 123, 123–26, 88 S.Ct. 1620, 1620–22, 20 L.Ed.2d 476 (1968). For the reasons stated in our discussion of the sufficiency of the evidence, we also reject Campbell's argument that the Boughs' testimony was relevant only to a charge of conspiring to vote more than once.