UNITED STATES of America,
Plaintiff–Appellee,

v.

George T. WILCOX, also known as
Tommy Wilcox, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Roger COUNTS, also known as Tex
Counts, Defendant–Appellant.

Nos. 94–2472, 94–2478.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1995.

Decided March 24, 1995.

Rehearing Denied in No. 94-
2478 April 19, 1995.

Rehearing Denied in No.
94-2472 May 3, 1995.

Jeffrey J. Rosanswank, Cape Girardeau, MO, for George T. Wilcox.

Keith Sorrell, Poplar Bluff, MO, for Roger Counts.

Michael A. Price, Asst. U.S. Atty., argued, for appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WILL,* Senior District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Roger "Tex" Counts and George "Tommy" Wilcox appeal their convictions for cutting and removing timber from United States public lands, in violation of 18 U.S.C. § 1852 (1988), and committing depredation in excess of $100.00 against United States public lands, in violation of 18 U.S.C. § 1361 (1988). We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988), and we affirm.

## I. BACKGROUND

Counts and Wilcox were each charged with one count of cutting and removing timber from United States public lands, in violation of 18 U.S.C. § 1852 (1988), and one count of committing depredation in excess of $100.00 against United States public lands, in violation of 18 U.S.C. § 1361 (1988). A jury trial was commenced in the United States District Court for the Eastern District of Missouri.[1] Viewing the evidence in the light most favorable to the government, the following facts were proven at trial:

In late September of 1992, Toby Prewett informed Shannon County Deputy Sheriff Dwight Toy that Wilcox was illegally cutting timber on government land in the Mark Twain National Forest. Prewett lived with his parents near both the Wilcox residence and the entrance to the Forest alongside Highway E. Prewett told Deputy Toy that he had seen Wilcox's brown Chevrolet pickup truck leaving an area of the Forest known as "Turnback Hollow" located near Highway E with a load of wood blocks.

Deputy Toy contacted United States Forestry Service Officer David Clark and informed him that Counts and Wilcox were "grandmauling" in the Mark Twain National Forest.[2] Toy, who had known both Counts and Wilcox for several years, directed Clark's attention to both Wilcox and Counts, because Counts "had been seen running around [during that period of time] with Tommy [Wilcox]." After determining that no timber sales had been authorized in the area, Clark located between seventy-five and one hundred freshly cut white oak trees near Turnback Hollow. Clark, who had known both Counts and Wilcox for most of his adult life, testified that two paths into Turnback Hollow led past Counts' and Wilcox's residences.

On October 1, 1992, Clark contacted Gary Pritchett, manager of the Independent Stave Mill, located in nearby Birch Tree, Missouri. The Independent Stave Mill purchases white oak blocks to be sawed into stave bolts for whisky barrels, and is the only stave bolt mill within a forty mile radius. Pritchett testified that he had recently purchased between twenty and twenty-five loads of freshly-cut white oak bolts from Counts and Wilcox between August and October of that year.

Officer Clark then contacted Toby Prewett's father, Jerry Prewett, and brother, Rusty Prewett. Jerry Prewett later testified that he had seen Wilcox's truck being driven past his house in late summer or fall of 1992 with what appeared to be a load of wood. Jerry Prewett also testified that Wilcox, after Prewett had mentioned needing some wood, had said, "Well throw your saw in there, we'll go get you a load." Prewett declined the offer, telling Wilcox that he was going to get caught sooner or later. Rusty Prewett, who also lives near Turnback Hollow, testified that he had heard chainsaws running in the area during the time in question and that he had seen what he believed to be Wilcox's pickup truck in the area. He also testified to seeing Wilcox's pickup, containing two peo-

---

* The Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, presiding.

2. "Grand mauling" is a slang term for illegally cutting timber from government land. When asked where they had gotten the wood, perpetrators traditionally replied that they had gotten it at their grandma's.

ple, leaving the forest loaded with what he believed to be white oak blocks.

On October 2, 1992, Clark returned to Turnback Hollow with fellow U.S. Forest Service Officer Al Stevens, where they found an additional fifteen white oaks had been cut since his previous visit the day before. Clark returned to the Independent Stave Mill where Pritchett informed him that both Counts and Wilcox had been in that morning. Records revealed that the mill had purchased eighteen white oak stave blocks from Counts on October 2, and twenty-five from Wilcox on that same date. Total mill records admitted at trial revealed that the Independent Stave Mill paid out over $2,000.00 to Counts and Wilcox for a total of 496 white oak stave bolt blocks between August 7, and October 2, 1992.

In addition to the aforementioned testimony, Lyn Carpenter, United States Forest Service Master Timber Estimator, testified that the cut area involved an estimated 102 white oak trees, producing approximately 416 white oak stave bolt blocks, or just over four blocks per tree. On cross examination, Carpenter stated that the number of trees cut could potentially have produced as many as 496 blocks, depending on variations in the sawdust patterns.

The final government witness, United States Forest Service Wildlife Biologist Jody Eberly, testified as to the value of the depredation. Based on the potential value of white oak acorn yield, Eberly testified that the amount of depredation was approximately $100.00 per tree. Eberly's calculations were based on a figure of fifty-cents per unsorted pound of white oak acorns, which was provided through correspondence with the Missouri Department of Conservation's Licking Nursery. The defense objected to this testimony as inadmissible hearsay. The objection was overruled.

Following closing arguments, defense counsel moved to replace Juror 11, Patricia Zimmer, with an alternate juror on the basis that Zimmer "had been sound asleep not only during the arguments, but during the court trial itself," and had "slept through a great deal of [the Court's] instructions reading." The district court, while admitting that "there were occasions when she might have nodded her head and appeared to be asleep," denied the request, stating, "I felt that that particular juror had the opportunity and did observe all of the witnesses, and that she did observe and hear the attorneys and their opening statements, and their closing arguments, as well as my instructions...."

The jury returned a verdict of guilty on both counts for both Counts and Wilcox. Counts was sentenced to twelve months imprisonment on the 18 U.S.C. § 1852 count, to be served concurrently with forty-eight months for the 18 U.S.C. § 1361 count. Wilcox was sentenced to twelve months imprisonment on the 18 U.S.C. § 1852 count, to be served concurrently with thirty months for the 18 U.S.C. § 1361 count, and a special assessment of $50.00. Both Counts and Wilcox filed motions for a new trial or a judgment of acquittal, which were denied. They now appeal.

## II. DISCUSSION

### A. Sufficiency of the Evidence

■■■■ Counts and Wilcox argue that the district court erred in overruling their motion for judgment of acquittal at the conclusion of the government's case in chief. Counts and Wilcox argue that the government failed to produce any evidence connecting them to the severed timber. When reviewing sufficiency of the evidence, we view the evidence in the light most favorable to the government, granting the government the benefit of all inferences that may reasonably be drawn from the evidence. *United States v. Mitchell,* 31 F.3d 628, 632 (8th Cir.1994). We will reverse "only if no reasonable jury could have concluded beyond a reasonable doubt that [the defendants were] guilty of the charged offense[s]." *United States v. Johnson,* 12 F.3d 827, 831 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1860, 128 L.Ed.2d 482 (1994).

While the government's case in chief consisted almost entirely of circumstantial evidence, we believe that evidence was sufficient to convince a reasonable jury of both Counts' and Wilcox's guilt beyond a reasonable doubt. "[B]ecause circumstantial evidence is

intrinsically as probative as direct evidence, the same standard applies even where a conviction rests entirely on circumstantial evidence." *Durns v. United States,* 562 F.2d 542, 546 (8th Cir.) (citations omitted), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977). As such, we conclude that the district court properly overruled Counts' and Wilcox's motions for judgment of acquittal.

### B. Amount of Depredation

■ Counts and Wilcox argue that the district court erred in overruling their objection to Jody Eberly's testimony concerning the amount of depredation. They contend that her testimony regarding the value of white oak acorns was based on inadmissible hearsay. The government argues that her testimony was admissible as hearsay reasonably relied on by experts in a particular field in forming opinions or inferences upon the subject under Fed.R.Evid. 703.[3]

If there was any error, and we do not think there was, we believe it would be harmless. Evidentiary rule violations which do not affect a defendant's constitutional rights are subject to Fed.R.Crim.P. 52(a)[4] harmless error analysis as opposed to the stricter harmless error analysis found in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). *United States v. DeAngelo,* 13 F.3d 1228, 1233 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994). Neither Counts nor Wilcox claim any constitutional violation. Under our interpretation of Fed.R.Crim.P. 52(a), "[a]n error is harmless if the reviewing court, after reviewing the entire record, determines that no substantial rights of the defendant were affected, and that the error did not influence or had only a very slight influence on the verdict." *United States v. Flenoid,* 949 F.2d 970, 973 (8th Cir.1991) (quotation omitted). We will reverse the conviction "only if the jury may have been substantially swayed by improperly-admitted

evidence...." *DeAngelo,* 13 F.3d at 1233 (quotations omitted).

Counts and Wilcox argue that the alleged error affected their substantial rights because the challenged testimony was necessary to establish the amount of depredation, an essential element of the 18 U.S.C. § 1361 charge. We disagree. The record is replete with other evidence that would allow the jury to conclude that the amount of depredation exceeded $100.00. Business records from the Independent Stave Mill conclusively establish the value of the felled trees in excess of $2,000.00, well above the statutory requirement. This court may affirm the district court on any basis supported by the record, *Dicken v. Ashcroft,* 972 F.2d 231, 233 (8th Cir.1992), and we do so now. Accordingly, we conclude that any error, if there was in fact error, was harmless.

### C. Juror Disqualification

■ Wilcox argues that the district court abused its discretion by overruling his request to remove Juror 11, Patricia Zimmer, for allegedly sleeping during the court's reading of the jury instructions. We review this issue under an abuse of discretion standard. *United States v. Edwards,* 994 F.2d 417, 424 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 701, 126 L.Ed.2d 667 (1994) (" 'The decision of whether or not to remove a juror is normally vested in the wise discretion of the trial court.' " (quoting *United States v. Key,* 717 F.2d 1206 (8th Cir.1983))). If the record shows a legitimate basis for the district court's decision to retain the juror, there is no abuse of that discretion. *Key,* 717 F.2d at 1209.

The record clearly shows that Judge Limbaugh believed that Juror Zimmer had heard all of the evidence and was capable of deliberating and reaching a fair verdict. Because the record reflects a legitimate basis for the decision of the district court, we find no abuse of discretion. *Edwards,* 994 F.2d at 424; *Key,* 717 F.2d at 1209.

---

**3.** "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed. R.Evid. 703.

**4.** "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

## III. CONCLUSION

Accordingly, we affirm the judgment of the district court.