COLLOTON, Circuit Judge, concurring in part and dissenting in part. I concur in all but Part II.A.3, footnote 3, and Part III of the .court’s opinion. I would affirm Veltrez Black’s conviction for unlawful possession of a firearm. In reversing Black’s conviction based on an assertion of insufficient evidence, the majority presents an argument of the sort that one might expect from capable defense counsel at trial. The opinion discusses five incriminating pieces of evidence separately, hypothesizes why each might be discounted or explained away, and then concludes that there must be reasonable doubt. Suggesting a “gotcha” moment, the court cites the testimony of one police officer that he personally had “a speculation” about the genesis of the seized firearm, and implies that the jury—after considering all of the evidence in accordance with proper instructions—merely speculated in reaching its verdict. This is not the correct approach to appellate review of a jury verdict. We review only the legal question “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Musacchio v. United States, — U.S.-, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In conducting that review, we must evaluate the evidence collectively, taking it all together as a unified whole, not divide it into discrete categories to be analyzed separately. And we must remember that “circumstantial evidence is intrinsically as probative as direct evidence.” United States v. Wilcox, 50 F.3d 600, 602-03 (8th Cir. 1995) (quoting Durns v. United States, 562 F.2d 542, 546 (8th Cir. 1977)). There is no requirement that the prosecution produce a witness who saw Black with a gun in hand or tossing a firearm out the window. The government here presented a convincing circumstantial case that Black possessed a firearm that he threw from Omar Rush’s vehicle during flight from police on April 22, 2014. Black acknowledged his intent to possess firearms when he wrote a letter from prison in 2010, saying that he had been leaving his gun at home, but that “now” it is going “to be on my hip at all times.” This is not “propensity” evidence, ante, at 603; it is an admission that was received in evidence without limitation. The issue here is not admissibility of evidence, but sufficiency of proof. On the date of the charged offense, police conducted surveillance of Black and his cousin Omar Rush. They saw Black get into his own car briefly before entering Rush’s vehicle as the passenger. Black denied that he possessed a gun while with Rush and testified that he had retrieved a phone charger from his own car before entering Rush’s. But an officer who later searched Rush’s vehicle after the chase said police did not find “anything” in the car; another officer said that they found “nothing.” Police then followed the two men and attempted a traffic stop of Rush and Black in the parking lot of an apartment complex. After Rush and Black momentarily pulled over, an officer saw Black open the passenger door slightly and lean toward the floor. A second officer testified that he also saw Black lean forward “like he was reaching under the seat,” and that based on Black’s movements, he believed that Black “was possibly armed or hiding something.” A jury could infer that Black was handling a firearm or attempting to conceal it. Rush and Black then fled at a high rate of speed through the parking lot. At one point, after a long straightaway, the suspect vehicle made a ninety-degree left turn. As Rush and Black turned the corner, an oncoming pickup truck blocked the view from the trailing police car, and the officers could not see the suspect vehicle for a few seconds. After the chase ended, police found a firearm—covered with asphalt-like debris and displaying a marred rear sight assembly—on the ground to the right of the path where the Rush/Black vehicle had passed. The gun was found in the exact spot where the passenger side of the suspect vehicle passed while it was out of sight of the police officers during the chase. A jury could infer that Black chose to discard the gun at the precise moment when he knew that the officers could not see him. The driver of the truck, who was an employee of the apartment complex, testified that when the Rush/Black vehicle came around the corner, he saw Rush with both hands on the steering wheel. The jury reasonably could conclude that this evidence, together with the location of the firearm on the right side of the vehicle’s path, eliminated Rush as the person who tossed the gun. The truck driver did not see a gun on the ground when he approached his truck just before Rush and Black drove past. Another employee, who first saw the gun after the car chase, said that he did not see the gun when he likely passed the spot earlier in the day. Neither employee had ever seen a firearm on the ground in several years of working at the complex. The jury reasonably could infer that the gun came from Black during the car chase, not from another source. Black testified at trial. He denied doing anything with his hands after the traffic stop, and denied throwing a firearm out the window during the chase. In cross-examination about his credibility, Black admitted to prior convictions for aiding and abetting a drive-by shooting, aggravated robbery, and twice unlawfully possessing a firearm, in 2011 and 2013. He also admitted to attempting to bribe a prosecution witness to change his testimony in the aggravated robbery case. The jury reasonably could discredit Black’s denials. Taking all of this circumstantial evidence together, a rational jury could conclude beyond a reasonable doubt that Black possessed a firearm on April 22, 2014. The jury rationally could infer beyond a reasonable -doubt that Black brought a firearm (not an undiscovered phone charger) to Rush’s car, that the two men fled from police after Black considered whether to conceal the gun under his seat, that Black threw the gun out the window when he knew that he could not be seen by police, and that Black lied at trial when he denied possessing the gun. In deciding whether there was proof beyond a reasonable doubt, the jury was permitted to consider whether the confluence of all these circumstances—the pledge to carry a gun at all times, the furtive movements after the initial stop, the flight from police, the discovery of the damaged gun on the chase route precisely where the vehicle went out of sight, and the employees’ testimony that no gun was seen earlier—could reasonably be explained as merely an unlucky coincidence for Black. The majority’s contrary approach of proffering innocent explanations for each piece of evidence in isolation and concluding that there must be reasonable doubt is inconsistent with the proper standard of review. The jury was not irrational to return a verdict of guilty. I would affirm the judgment of conviction in Black’s case.[6] . I would reject Black’s alternative argument that inaccurate testimony by a police officer before the grand jury warranted dismissal of the indictment. See United States v. Aldridge, 561 F.3d 759, 763-64 (8th Cir. 2009). I also conclude that the district court did not abuse its discretion in imposing Black’s sentence.